**Sherol DIRUZZA, aka Sherl Janc, Plaintiff–Appellant,**

v.

**COUNTY OF TEHAMA; Robert Heard; Jerry Floyd, Defendants–Appellees.**

No. 01–17461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2002.

Filed March 21, 2003.

Allison Fairchild, Alameda, CA, and David A. Prentice, Prentice & Schaap, Sacramento, CA, for the appellant.

J. Scott Smith and Laurence L. Angelo, Angelo, Kilday & Kilduff, Sacramento, CA, for appellee, County of Tehama.

Stephen E. Horan, Porter, Scott, Weiberg & Delehant, Sacramento, CA, for appellees, Robert Heard and Jerry Floyd.

Before McKEOWN and PAEZ, Circuit Judges, and POLLAK,* District Judge.

## OPINION

POLLAK, District Judge.

With this case, this court has inherited a rather complicated procedural history, comprising parallel litigation in state and federal tribunals situated in California. Today, we are asked to disentangle the threads woven by these separate court systems as they have independently sought to resolve the same core conflict. Specifically, our task in the current chapter of the dispute is to determine the combined preclusive effect, in federal court, of a California trial court judgment and the California appeals court decision affirming that judgment. Complicating the inquiry is that the state appellate opinion, while arriving at the same ultimate conclusion as the state trial court, employed different reasoning in doing so. We conclude that the holding of the California trial court has a collateral estoppel effect that precludes the plaintiff from continuing to pursue her action in federal court.

## FACTUAL BACKGROUND

At the root of all the court battles involved in this case is friction between Plaintiff/Appellant Sherol DiRuzza and certain members of the Sheriff's Department of Defendant/ Appellee Tehama County. Before her eventual discharge, DiRuzza was employed by the Sheriff's Department as a Deputy Sheriff. In 1994, during DiRuzza's tenure at the department, Defendant/Appellee Robert Heard became a candidate for the elective position of Tehama County Sheriff. DiRuzza chose to lend her support to the incumbent sheriff, Mike Blanusa, and participated in a televised commercial for Blanusa's campaign. On Election Day, 1994, Heard was victorious, as was Defendant/Appellee Jerry Floyd, who had run for Undersheriff.

On December 10, 1994 (after the election, but before Heard took office), DiRuzza was allegedly assaulted by her fiance. During the confrontation, DiRuzza discharged eight rounds from her service weapon out a window, apparently seeking to alert neighbors to her plight. As a consequence of her unauthorized use of her service weapon, DiRuzza was the subject of a disciplinary hearing conducted by Blanusa that resulted in her being suspended for thirty days without pay. As a further consequence, DiRuzza was charged with a felony count of "gross negligent discharge of a firearm" and a misdemeanor count of "exhibiting a firearm in a rude and threatening manner."

On January 3, 1995, Heard and Floyd took office. DiRuzza alleges that, upon her return from suspension, the newly ensconced Sheriff and Undersheriff subjected her to a hostile and oppressive work environment because she had backed Blanusa in the election. She claims that she was relegated to less desirable job assignments, was not allowed to be ceremonially re-sworn as a peace officer, and was denied the right to carry a department-issued firearm. DiRuzza asserts that she was one of those on the Heard/Floyd "hit

---

\* The Honorable Louis H. Pollak, Senior United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

list"—persons who had supported Blanusa and so were to be punished and eventually removed from the Sheriff's Department. According to DiRuzza, Heard and Floyd enlisted the assistance of an investigator to "dig up the dirt" on Blanusa supporters.

In April 1995, approximately four months after the new Sheriff and Undersheriff had assumed office, the Tehama County District Attorney offered DiRuzza a plea bargain for the criminal charges pending against her. The pending criminal charges were to be dropped if DiRuzza would plead guilty to the infraction of disturbing the peace and resign from the Sheriff's Department. Knowing that her law enforcement career would be scuttled by a felony conviction, DiRuzza accepted the plea bargain and resigned, affirming that she was acting "voluntarily and with full knowledge of the consequences." DiRuzza later characterized the events leading up to her resignation as tantamount to "constructive termination."

## PROCEDURAL HISTORY

And so commenced the trail of litigation. DiRuzza filed a complaint in federal district court in March of 1996 alleging twelve causes of action. Many of the claims were dismissed, but the parties proceeded with discovery on the retaliation claims DiRuzza had brought pursuant to 42 U.S.C. §§ 1983 and 1985, as well as certain claims based on state law. On March 4, 1998, the district court granted summary judgment for the defendants on the §§ 1983 and 1985 claims, based on the Supreme Court's jurisprudence regarding the free-speech rights of persons holding public office. In its memorandum, the court explained that although most public employees enjoy the protection of the First Amendment when they speak, see *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), those employees involved in the making of agency policy have no First Amendment protection against

dismissal for expressions of opinion incompatible with the policy agendas of their superiors, see *Elrod v. Burns*, 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Noting that a public employee is considered a policymaker if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved," *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the district court granted summary judgment against DiRuzza upon determining that deputy sheriffs are properly characterized as policymakers. *DiRuzza v. County of Tehama*, No. S–96–596 (E.D.Cal. Mar. 4, 1998). The court declined to retain jurisdiction over the supplemental state claims.

DiRuzza appealed the district court's 1998 decision to this court. In March 2000, we reversed the grant of summary judgment, finding that the "defendants [had] failed to show as a matter of law that DiRuzza was a policymaker and that political loyalty was therefore an appropriate requirement for her job." *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1306 (9th Cir.2000). We declined to endorse a *per se* rule that all deputy sheriffs were or were not policymakers; instead, we held that "[t]he critical inquiry is the job actually performed." *Id.* at 1310. The case was then remanded for further findings as to whether DiRuzza's role at the Sheriff's Department was in fact that of a policymaker. *Id.* at 1313.

The district court's task on remand was complicated significantly by separate litigation that had taken place in the state courts while the federal case pressed forward. While her first federal appeal was pending, DiRuzza had re-filed her state-law claims in the Tehama County Superior Court, alleging the same facts and circumstances as in the federal complaint. DiRuzza charged that the defendants violat-

ed the free speech, equal protection, and due process clauses of the California constitution, as well as other state-law provisions. Later, she voluntarily dismissed the due process and equal protection claims, leaving only the claims for violation of the California constitution's free speech provision and California Government Code § 3204.[1]

On September 23, 1999, the Superior Court granted summary judgment for the defendants, holding that "when Plaintiff resigned her position as one of the conditions of her plea bargain, the resignation was an independent act which destroyed the cause of action." *DiRuzza v. County of Tehama*, No. CI44322 (Cal.Super.Ct. Sept. 23, 1999). The state court also observed that the district attorney, not the sheriff, is ultimately responsible for charging crimes and negotiating plea bargains, stating that "the Sheriff may have a lot of power, but he does not control the District Attorney." Moreover, DiRuzza, the court said, received the benefit of her bargain— she did not have to risk a felony conviction. In short, "she cannot resign as part of the plea agreement that was to her favor and then turn around and sue because she allegedly was forced out."

On appeal, the California Court of Appeals for the Third District affirmed, rul-ing that DiRuzza's claims were "entirely without merit." *DiRuzza v. County of Tehama*, No. 44322 (Cal. Ct.App. June 26, 2001). The complexities present in the instant appeal arose because the California Court of Appeals affirmed on grounds other than those spelled out by the Superior Court. Rather than examining the grounds supporting the Superior Court's grant of summary judgment, the state appellate court focused its analysis on an antecedent question—namely, the defendants' entitlement to judgment on the pleadings—and, therefore, inquired whether there was a "reasonable possibility the plaintiff [could] amend the complaint to state a viable claim." With regard to DiRuzza's claim of a violation of the state constitutional right of free speech, the court held that "the terms of the free speech provision do not include any guidelines, mechanisms, or procedures from which a damages remedy could be inferred." Given this "jurisprudential dead end," the court determined that there was no viable way in which DiRuzza could amend the aspect of her complaint alleging infringement of her rights under the California constitution. The court further ruled that DiRuzza's claim under California Government Code § 3204 was also unavailing.[2]

---

1. The language of § 3204 is quoted *infra* in footnote 2.

2. The full text of § 3204 reads:
 No one who holds, or who is seeking election or appointment to, any office or employment in a state or local agency shall, directly or indirectly, use, promise, threaten or attempt to use, any office, authority, or influence, whether then possessed or merely anticipated, to confer upon or secure for any individual person, or to aid or obstruct any individual person in securing, or to prevent any individual person from securing, any position, nomination, confirmation, promotion, or change in compensation or position, within the state or local agency, upon consideration or condition that the vote or political influence or action of such person or another shall be given or used in behalf of, or withheld from, any candidate, officer, or party, or upon any other corrupt condition or consideration. This prohibition shall apply to urging or discouraging the individual employee's action.

 Because the plaintiff's allegations, as analyzed by the California Court of Appeals, did not describe a transaction of a sort contemplated by § 3204, the court ruled that it would not be feasible for DiRuzza to amend her statutory claim. *DiRuzza v. County of Tehama*, No. 44322 (Cal. Ct.App. June 26, 2001).

By the time the California Court of Appeals issued its opinion in the state litigation, the federal litigation had returned to the district court on remand from this court. On October 1, 2001, some three months after the decision of the California Court of Appeals, the defendants filed a Renewed Motion for Summary Judgment in the district court. The defendants argued that the outcome of the state litigation barred the federal court from further consideration of claims of unlawful retaliation. In November 2001, the district court granted summary judgment in favor of the defendants, deeming the net effect of the state litigation to be preclusive of the federal litigation either via res judicata or via collateral estoppel. *DiRuzza v. County of Tehama*, No. S-96-596 (E.D.Cal. Nov. 21, 2001). It is that 2001 district court decision which DiRuzza now appeals.

## STANDARD OF REVIEW

■ This court reviews a district court's summary judgment order *de novo*, viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). Granting summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

■ In determining the preclusive effect of a state-court judgment, this court must "refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

## DISCUSSION

As noted above, the district court found that both res judicata and collateral estoppel justified summary judgment on DiRuzza's federal claims. For the reasons that follow, we agree with the district court's determination that the state litigation precludes further pursuit by DiRuzza of the federal litigation. But we confine our holding to collateral estoppel.

■ Collateral estoppel, or issue preclusion, dictates " 'that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *People v. Santamaria*, 8 Cal.4th 903, 35 Cal.Rptr.2d 624, 884 P.2d 81, 84 (1994) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). The Supreme Court of California has described its application of the doctrine as follows:

Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Lucido v. Superior Court*, 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990) (citations omitted).

The parties do not question that the fourth and fifth elements of collateral estoppel are present here: there is a final

state-court judgment on the merits and the same parties are involved here as were in the state litigation. The dispute here revolves around the determination of what issues were "actually litigated" and "necessarily decided" in the California courts—and whether any of those issues is "identical to" a dispositive issue in the federal litigation. Both the state trial court and the state appellate court made clear the issues they considered fatal to DiRuzza's state suit, but, as we have noted, the two courts spoke to different sets of issues. The trial court granted summary judgment against DiRuzza because it found that her resignation was an independent act that negated any claim that her rights had been violated—the very issue sought to be pressed by the appellees with respect to DiRuzza's federal claims. The appeals court, however, chose to affirm the summary judgment on grounds different from—and, from a procedural perspective, antecedent to—those relied upon in the trial court: to wit, that the county defendants were entitled to judgment on the pleadings because (a) the California constitution's free-speech clause did not provide for an award of damages to one deprived of her free-speech rights, and (b) DiRuzza had not alleged a grievance coming within the ambit of § 3204.

Given the disparate underpinnings of the state courts' holdings, the task confronting this court is to determine what issues may fairly be said to have been preclusively determined by the tandem of state courts.

If the California appellate court had explicitly affirmed the holding *and the rationale* of the trial court, the current federal appeal would be a simple matter, as the trial court's finding that DiRuzza resigned of her own volition would indeed have collaterally estopped her from arguing otherwise in support of her § 1983 and § 1985 claims. As with the state claims, so would it have been with the federal claims: Di-Ruzza's choice to leave her position would have barred pursuit of the contention that her federal rights had been violated. If, however, the procedural scenario that actually unfolded—namely, state-appellate-court affirmance on a ground other than that adopted by the state trial court—signifies, under California's collateral estoppel jurisprudence, that only the reasoning applied by the affirming court commands the deference of the federal courts, it would then seem that DiRuzza's federal claims could proceed in federal court.

Ultimately, then, the question presented here may be summarized as follows: does the collateral estoppel effect of the issues decided by a trial court survive after a reviewing court's affirmance on different grounds? Doubtless, the issues decided by the appellate court have a potentially preclusive effect. But is there also preclusive effect for those issues not addressed by the appellate court but crucial to the trial court's decision?

California case law addressing this question is sparse. The earliest of the relevant cases, a California Supreme Court case decided in 1865, supports the conclusion that an appellate court's affirmance for any reason implicitly ratifies all reasoning given in the court below. To be sure, a nebulous exception to the rule and a recent California appellate decision cut against the timeworn precedent and may counsel in favor of more selective application of collateral estoppel principles. In the end, however, we conclude that the 1865 decision is controlling. The principles enunciated in that opinion have been questioned by a lower appellate court, but we find no opinions from the highest California court undermining the authority of its early holding.

The venerable nineteenth-century case to which we refer is *People v. Skidmore,*

27 Cal. 287 (Cal.1865).[3] In the initial stages of *Skidmore's* procedural history, the parties stipulated that a referee would "try all the issues of law and fact ... and ... report a judgment thereon." *Id.* at 289. In the resulting report, the referee found "from the facts ... stated [in the pleadings]" that the plaintiff should not be permitted to recover. *Id.* at 292. Judgment was entered accordingly, and the plaintiff took the case to the California Supreme Court. That court affirmed the judgment, but relied upon a procedural issue—misjoinder—in reaching its decision. The case eventually returned to the California Supreme Court for a determination of whether the plaintiff, having corrected the misjoinder, could bring the suit again. The court determined that, regardless of its previous opinion's reliance on the misjoinder issue, the referee's report and resulting judgment, which reached the merits of the case, had been affirmed by the judgment accompanying the previous opinion. Accordingly, the plaintiff could not bring suit again, as the merits of the case had already been adjudicated—this despite dicta in the California Supreme Court's first opinion that assured "[t]he effect of the judgment will not be to preclude the plaintiff from suing again when the cause of action can be more formally set out." *Id.* at 292. The pertinent portion of the later and controlling California Supreme Court opinion reads:

> The judgment below was not reversed, either in whole or in part, by the Supreme Court, nor was it modified in any particular; and it follows, if the Court dealt with the judgment at all, it must have affirmed it to the whole extent of its terms. But the nature and scope of the Court's final action is clearly indicated by the words "judgment affirmed," as they occur in the published report of the case. (17 Cal. 261) We have examined the record, now remaining in this Court, and find an unqualified entry to the effect that the judgment was affirmed. .

> The Court, in examining the judgment in connection with the errors assigned, found that there was at least one ground upon which the judgment could be justified, and therefore very properly refrained from considering it in connection with the other errors. But the affirmance, still, was an affirmance to the whole extent of the legal effect of the judgment at the time when it was entered in the court below. The Supreme Court found no error in the record, and therefore not only allowed it to stand,

**3.** It bears mentioning that *Skidmore* was not cited by the parties. In arguing for an outcome similar to that suggested by *Skidmore*, Appellees' counsel have invoked *Sandoval v. Superior Court*, 140 Cal.App.3d 932, 190 Cal. Rptr. 29 (1983). But we think that *Sandoval*, closely examined, is not really apposite to the case at bar. The language in *Sandoval* that might be read to support a broad application of collateral estoppel states: "[O]nce the appeal is settled favorably to the plaintiff and thereafter dismissed, the Restatement analysis and reason itself dictate that the trial court judgment reemerges with sufficient finality to permit the application of collateral estoppel." *Id.* at 32. While the reference to a judgment "reemerging," considered alone, might be taken to imply that the basis of a lower court's holding stands regardless of the grounds given approbation by the appellate court, the procedural context of *Sandoval* does not support such a conclusion. The *Sandoval* court was considering a situation in which a case settled while appeal was pending, and held that, in those circumstances, the trial-court judgment serves as a collateral bar despite the fact that there was no appellate decision. The focus of the *Sandoval* opinion was the issue of a judgment's finality. Therefore, far from a situation in which an appellate court's justifications for a given outcome varied from those of the trial court, *Sandoval* did not even have an appellate opinion with which to compare the trial-court judgment, and does not argue in favor of (or, to be sure, against) a broad preclusion rule.

but affirmed it as an entirety, and by direct expression.

*Id.* at 292–93.

Decades later—in 1940—the California Court of Appeals for the First District arrived at the same conclusion as the *Skidmore* court, but did not cite that 1865 decision. In *Bank of America National Trust & Savings Ass'n v. McLaughlin Land & Livestock Co.*, 40 Cal.App.2d 620, 105 P.2d 607 (1940), the state court evaluated the collateral estoppel effect of an affirmance by this court of a judgment of a bankruptcy court. The bankruptcy court had based its decision on two grounds, only one of which was invoked by this court when we affirmed. The state court wrote: "[I]t must be assumed that when the Circuit Court of Appeals affirmed the judgment it became res judicata of both the issues tendered and tried." 105 P.2d at 612.[4] In support of its ruling, the *McLaughlin* court relied upon the following passage from 34 *Corpus Juris* 773: "A general affirmance of a judgment on appeal makes it res judicata as to all the issues, claims, or controversies involved in the action and passed upon by the court below, although the appellate court does not consider or decide upon all of them."

In 1952 the California Court of Appeals for the First District, in *Natural Soda Products Co. v. City of Los Angeles*, 109 Cal.App.2d 440, 240 P.2d 993, 996 (1952), cited both the *Skidmore* and *McLaughlin* decisions for the "general rule" for which they stand, but noted that some cases might fall outside the reach of the principle: "the rule is not without exceptions, and where a finding is unnecessary and immaterial the rule of collateral estoppel does not operate." One might infer, based on *Natural Soda's* caveat, that, when an appellate court affirms without relying upon any aspect of the trial court's rationale, the affirmed court's holding will not necessarily be a bar to future litigation of any—or at least some—of the issues. However, in the *Skidmore* case itself, the California Supreme Court, in its first opinion, in reviewing the trial-court judgment entered pursuant to the referee's report, did not discuss the merits of the controversy—*i.e.*, the issues canvassed by the referee. Rather, the court cited misjoinder as the basis of its affirmance. Thus the *Skidmore* referee's entire discussion, under an expansive reading of *Natural Soda*, could be viewed as "unnecessary and immaterial," and hence not being entitled to any preclusive effect. Thus, the *Natural Soda* exception, if writ large, has the potential to eviscerate the Skidmore/McLaughlin rule.[5]

---

**4.** This court, in interpreting *McLaughlin*, has specifically observed that the "California position" on collateral estoppel "is that even if the appellate court refrains from considering one of the grounds upon which the decision below rests, an affirmance of the decision below extends legal effects to the whole of the lower court's determination, with attendant collateral estoppel effect." *Markoff v. N.Y. Life Ins. Co.*, 530 F.2d 841, 842 (9th Cir.1976). This court spoke favorably of California's rule, stating, "We believe that this is a sound application of the doctrine of collateral estoppel." *Id.*

**5.** Indeed, the federal district court whose judgment this court sustained in *Markoff v.*

*N.Y. Life Ins. Co.*, 530 F.2d 841 (9th Cir.1976) (discussed *supra* in footnote 4), commented, in evaluating *Natural Soda*, that "[t]o extend this exception so as to remove collateral estoppel effect from every alternative holding not addressed by an appellate court would be to allow the exception to swallow the general rule." *Markoff v. N.Y. Life Ins. Co.*, 369 F.Supp. 308, 314 n. 6 (D.Nev.1973).

In *Markoff*, the district court, although applying Nevada law, noted that Nevada had not resolved the issue of the estoppel effect warranted by a decision reviewed by an appellate court, and so adopted what it characterized as "the California position"—represented by *Skidmore* and *McLaughlin*. *See id.* at 314.

After *Natural Soda,* all was generally quiet on the collateral estoppel front in the courts of California for almost fifty years. But three years ago the Court of Appeals for the Second District called the state's doctrine into question. In *Butcher v. Truck Insurance Exchange,* although determining the effect of a prior *federal* diversity judgment, the court made clear that it was "consider[ing] the rule that applies in California." 77 Cal.App.4th 1442, 92 Cal.Rptr.2d 521, 531 (2000). *Butcher* acknowledged two competing lines of case authority: (1) decisions representing what appeared to be the prevailing California rule discussed above; and (2) decisions exemplified by the Second Circuit's opinion in *Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A.,* 92 F.2d 37 (2d Cir.1937), which held that "the appellate court in the prior action determines the preclusive effect of its judgment, i.e., the judgment is conclusive on [the ground upheld by the appellate court]," *Butcher,* 92 Cal.Rptr.2d at 531.

*Butcher* did not cite the *Skidmore* holding at all, and noted that the portion of *Corpus Juris* relied on by *McLaughlin* had lost any claim to authority, having been completely abandoned in *Corpus Juris Secundum. Id.* at 533. Further, the *Butcher* court observed, the *McLaughlin* court had failed to consider the persuasive arguments marshalled by Judge Augustus Hand in *Moran Towing. Id.* at 534. Ultimately, the *Butcher* court opined that "the reasoning of the *McLaughlin* court has not withstood the test of time, and it would be unwise to follow a rule that looks only to the judgments, without taking account of the reasons for those judgments as stated in the appellate courts' opinions.... We hold that if a court of first instance makes its judgment on alternative grounds and the reviewing court affirms on only one of those grounds, declining to consider the

other, the second ground is no longer conclusively established." *Id.*

 *Butcher* appears to be the only published California appellate opinion clearly supporting a departure from the general California rule that an affirmance of a judgment blesses all the grounds voiced in the trial court. *Butcher* advances plausible arguments against the general California rule, but it comes from an intermediate appellate court which failed to acknowledge that the California Supreme Court, in *Skidmore,* had addressed the subject. Until we receive a definitive indication that *Skidmore* no longer represents the law of California, we will adhere to that case's precepts. Therefore, we reiterate the understanding of California law we stated in *Markoff v. New York Life Insurance Co.,* 530 F.2d 841, 842 (9th Cir.1976) (discussed *supra* in footnotes 4 and 5): "[The California position] is that even if the appellate court refrains from considering one of the grounds upon which the decision below rests, an affirmance of the decision below extends legal effects to the whole of the lower court's determination, with attendant collateral estoppel effect."

## CONCLUSION

Because *Skidmore* remains the law of California, it controls here and, therefore, collateral estoppel bars DiRuzza's suit. In the instant case and in *Skidmore,* the appellate court in prior litigation affirmed on a ground other than that relied upon by the trial court's judgment. *Skidmore* makes clear that, in that situation, the trial court's judgment, once affirmed, may be invoked as a bar to relitigation of the issue or issues deemed conclusive in the trial court. In the state litigation that proceeded parallel to the instant federal litigation, the state trial court found that DiRuzza's resignation was voluntary and that the vol-

untariness in turn vitiated any claim that the alleged acts of the defendants caused her "discharge." That finding, we hold today, is one the defendants may rely upon to bar relitigation of the issue in federal court. Absent the causal link found lacking by the state court, DiRuzza's federal claims of retaliatory discharge cannot stand. Because we conclude that collateral estoppel—i.e., issue preclusion—disposes of the plaintiff's claims, we find it unnecessary to address the district court's alternative holding that res judicata—i.e., claim preclusion—bars DiRuzza's suit.[6]

Judgment AFFIRMED.

6. In ruling that res judicata barred DiRuzza's claims, the district court expressed reservations about a portion of this court's opinion in *DiLoreto v. Downey Unified Sch. Dist. Bd. of Ed.*, 196 F.3d 958 (9th Cir.1999), a case that followed a procedural path remarkably similar to that of the case at bar. In *DiLoreto*, this court, in a footnote, stated that "res judicata does not bar [the] federal action" because "Mr. DiLoreto originally brought all claims in one action, and his state and federal actions involve different claims." *Id.* at 964 n. 3. That conclusion was stated with no express reference to California law regarding what constituted a "different claim." The district court weighing DiRuzza's case labeled the quoted footnote as "dictum [that] does not clearly conform with California's claim preclusion doctrine." *DiRuzza v. County of Tehama*, No. S–96–596 (E.D.Cal. Nov. 21, 2001).

Whether or not the *DiLoreto* footnote is dictum, the district court's reservations are understandable. Given the similarities between the federal and state violations alleged, *DiLoreto's* characterization of the state and federal actions as "involv[ing] different claims" is somewhat in tension with Califor-

nia's "primary rights" theory, under which only one cause of action exists for the invasion of one primary right. *See Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 737–38 (9th Cir.1985) (en banc); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4412 n. 21 (2002) (commenting that *DiLoreto's* reasoning that "different claims were involved is not persuasive"). We also note that *DiLoreto* may be read to conflict with at least two California appellate cases. *See Acuna v. Regents of the Univ. of Cal.*, 56 Cal.App.4th 639, 65 Cal.Rptr.2d 388, 395 (1997) (rejecting argument that res judicata does not apply if the federal court has declined to take pendent jurisdiction over the state claims); *Mattson v. City of Costa Mesa*, 106 Cal.App.3d 441, 164 Cal.Rptr. 913, 922 (1980) (holding that res judicata barred further litigation notwithstanding fact that the plaintiff initially filed a complaint alleging both federal and state claims). However, since the *DiLoreto* footnote addressed issues of res judicata, and we find collateral estoppel sufficient to dispose of the issues in the case at bar, the potential ramifications of the *DiLoreto* footnote need not detain us further.