FILED

OCT 13 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   AZ-15-1375-FLJu |
| ) | |
| PATRICK LAZZARI, ) | Bk. No.   2:10-bk-18314-BKM |
| ) | |
| Debtor. ) | Adv. Pro. 2:14-ap-00725-BKM |
| _____ ) | |
| PATRICK LAZZARI, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v.                        ) | **MEMORANDUM**[*] |
| ) | |
| DANIEL LAZZARI, as Conservator) | |
| for Michael Lazzari; SALLY   ) | |
| MARTINEZ, as Conservator for ) | |
| Michael Lazzari,           ) | |
| ) | |
| Appellees.    ) | |
| _____) | |

Argued and Submitted on September 23, 2016
at Phoenix, Arizona

Filed – October 13, 2016

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Brenda K. Martin, Bankruptcy Judge, Presiding

Appearances:  Dean W. O'Connor argued for Appellant Patrick
Lazzari; Jenna Rose Swiren of Fennemore Craig,
P.C. argued for Appellees Daniel Lazzari and Sally
Martinez.

Before: FARIS, LAFFERTY, and JURY, Bankruptcy Judges.

---

   [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Debtor Patrick Lazzari appeals the bankruptcy court's order granting summary judgment in favor of appellees Daniel Lazzari and Sally Martinez on their § 523(a)(4)[1] claim. The court applied issue preclusion to a state court ruling determining that the debtor had violated his fiduciary duty to his brother, Michael Lazzari. We discern no error. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND[2]

### A. The Lazzari family

Patrick, Daniel, Sally, and Michael are siblings.[3] Another brother, Steven, is not involved in this litigation.

In or around October 2000, Michael suffered a serious work-related injury. He was prescribed numerous medications for pain management and psychiatric disorders. Between 2001 and 2005, Michael overdosed on drugs at least ten times. Some of those incidents involved suicide attempts and resulted in involuntary psychiatric commitment.

Michael generally lived at home with his parents and brother Steven in San Francisco. In late 2004 or early 2005, Michael

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] For ease of reference, we identify the members of the Lazzari family by their first names. No disrespect is intended.

2

went to Arizona to live with Patrick.

After Michael's workplace injury, Patrick handled Michael's personal finances.  Shortly after moving to Arizona, on March 4, 2005, Michael signed a durable power of attorney appointing Patrick as his attorney-in-fact.

**B.    The Bassillio Trust**

Michael and Patrick were beneficiaries of their aunt's trust, the Gloria Bassillio Revocable Trust, dated March 9, 2003, as amended and restated on December 26, 2003 (the "Bassillio Trust").  They were each to receive fifty percent of real property located on Naples Street in San Francisco (the "San Francisco Property").[4]

The Bassillio Trust provided that, upon Ms. Bassillio's death, Maurice Lazzari (Ms. Bassillio's brother and the siblings' father) would serve as successor trustee.  Michael was named second successor trustee, and Patrick was named the third successor trustee.

Ms. Bassillio passed away in December 2005.  In February 2006, both Maurice[5] and Michael signed a notice stating that they were unwilling to serve as successor trustee.  As such, Patrick became the trustee of the Bassillio Trust.

---

[4] The Bassillio Trust documents state that Michael and Patrick were to each receive a half interest in the San Francisco Property, while their father was to receive the other trust assets.  However, the parties have stated throughout this litigation that Michael and Patrick were the only beneficiaries and were to receive a half interest in all trust property.

[5] A court investigator later found evidence that Patrick unduly influenced Maurice, who was in his eighties and suffered from alcohol-related dementia.

3

On March 9, 2006, Michael signed a Beneficiary Disclaimer and Renunciation ("Disclaimer") in which he disclaimed his entire interest in the Bassillio Trust to Patrick. The Disclaimer provided that Michael intended for the San Francisco Property to be distributed solely to Patrick.

That same day, Patrick executed a grant deed distributing the San Francisco Property from the Bassillio Trust to himself. He later took out a $419,000 loan secured by the otherwise unencumbered San Francisco Property.

A day after Michael executed the Disclaimer, he apparently overdosed on prescription medication and suffered a severe anoxic brain injury while hospitalized. He spent months in the hospital and skilled nursing facility before returning to San Francisco to live with his parents and brother Steven. As a result of his brain injury, Michael now requires life-long medical and attendant care.

**C.    The conservatorship proceedings**

In May 2008, appellees Daniel and Sally filed a petition for temporary conservatorship of Michael. The California superior court held a hearing on the petition and appointed Daniel and Sally as temporary conservators over Patrick's objections.

The parties engaged in legal wrangling over Michael's conservatorship for a number of years. Daniel and Sally alleged that Patrick acted unscrupulously to deprive Michael of his property. Among other things, in January 2009, they filed a petition to compel Patrick to account for his handling of Michael's finances. The superior court granted the petition and also ordered Patrick to pay attorneys' fees and costs totaling

4

$17,768 and a surcharge of $64,077.41 for violation of fiduciary duties as attorney-in-fact. Daniel and Sally also obtained a restraining order against Patrick.

Daniel and Sally took the position that Michael was entitled to possession of fifty percent of the personal and real property held by the Bassillio Trust at the time of Ms. Bassillio's death. Patrick opposed Daniel's and Sally's position and participated in the conservatorship proceedings between 2008 and 2010. Thereafter, Patrick received notice of the proceedings but did not participate as vigorously. Daniel and Sally stated that Patrick engaged in the litigation on at least two occasions but chose not to file responses or objections to their filings.[6]

On May 17, 2010, Daniel and Sally filed an amended petition (the "Amended Petition") to, among other things, have the court declare the Disclaimer void; find that Patrick violated his duties to Michael; and transfer the San Francisco Property to Michael's conservatorship. Patrick did not respond to the Amended Petition.

**D.   Patrick's bankruptcy proceedings**

On June 10, 2010, shortly after Daniel and Sally filed the Amended Petition, Patrick filed his chapter 13 petition in the United States Bankruptcy Court for the District of Arizona. As a part of Patrick's amended chapter 13 plan, he proposed to "sell [the San Francisco Property] and proceeds will be used to pay

---

[6] Patrick initially refused to provide the parties or the court with a copy of documents or other information related to the Bassillio Trust. However, by order dated January 21, 2011, the superior court required Patrick to produce that information for an accounting.

5

creditors." The bankruptcy court granted relief from the automatic stay so that the superior court proceedings could continue.

**E.    The California Order**

By order dated March 10, 2011, the superior court held that the transfer of the San Francisco Property pursuant to the Disclaimer was void ab initio. The court found that: (1) the transfer of Michael's interest in the San Francisco Property to Patrick via the Disclaimer was void ab initio; (2) Patrick never rightfully held ownership of Michael's interest in the trust property; and (3) Patrick has been holding Michael's property as constructive trustee.

On August 8, 2011, the superior court issued an order ("California Order") on the Amended Petition that found that Patrick violated his duties, determined that the entire trust res should be vested in Michael's name, and required that Patrick be liable for any encumbrances on the San Francisco Property. The court held that Patrick violated his fiduciary duties as trustee by "acting in bad faith, wrongfully taking, concealing and disposing of property belonging to beneficiary Michael Lazzari, exerting undue influence over Michael Lazzari, and dealing with trust property for his own profit and in an interest [sic] directly adverse to beneficiary Michael Lazzari . . . ." It referenced the March 10, 2011 order and stated that "the transfer of Michael Lazzari's one-half interest in the [San Francisco Property] to Patrick Lazzari via Beneficiary Disclaimer and Renunciation was found void ab initio . . . ." The superior court held that "full ownership in the [San Francisco Property]

6

should be vested in Michael Lazzari, . . . that Patrick Lazzari is liable to Michael Lazzari for the amount of any encumbrances currently on the real property, and that the real property in its entirety is rightfully held by the conservatorship estate of Michael Lazzari." Patrick did not appear for the hearing on this matter, and he claimed that the California Order was entered by default.

In March 2012, the superior court awarded Daniel and Sally $58,501 in attorneys' fees and costs in connection with the conservatorship litigation.

**F. The adversary proceeding**

In May 2014 (after the adverse superior court rulings), the bankruptcy court granted Patrick's request to convert his case to one under chapter 7. He received his discharge in January 2015.

On August 29, 2014, Daniel and Sally initiated an adversary proceeding against Patrick, seeking to except from discharge the debt for the encumbrance on the San Francisco Property, the surcharge, and the award of attorneys' fees and costs under § 523(a)(2), (a)(4), and (a)(6).

Daniel and Sally filed a motion for summary judgment ("Motion for Summary Judgment") seeking a determination of nondischargeability under § 523(a)(2), (a)(4), and (a)(6). Among other things, they requested that the bankruptcy court give the California Order issue preclusive effect.

After a hearing and supplemental briefing, the bankruptcy court issued its Memorandum Decision on Summary Judgment ("Memorandum Decision"). It stated that issue preclusion prevented relitigation of the findings in the California Order

7

and that those findings are binding on the bankruptcy court. It determined that Daniel and Sally met their burden with respect to defalcation under § 523(a)(4), but not as to the § 523(a)(2) and (a)(6) claims or the fraud element of § 523(a)(4).

The bankruptcy court concluded that issue preclusion applied under California law, because (1) although the California Order was obtained by default, it was decided on the merits (as opposed to a procedural ground); (2) although the California Order was a default judgment, the issues were actually litigated; (3) the elements of defalcation under § 523(a)(4) were identical to that decided by the California Order; and (4) Patrick had an incentive to participate in the conservatorship proceedings, since the San Francisco Property was crucial to his amended chapter 13 plan. The bankruptcy court held that the nondischargeable debt was the claim "for the value of the mortgage lien on the trust property ($419,000 at 3.5%; $467,800.54 as of October 6, 2011), and the March 15, 2012 Order awarding attorney's fees and costs in the amount of approximately $58,000 relating to the Amended Petition."

On October 14, 2015, the court issued its Judgment Excepting Debt from Discharge. Patrick timely filed his notice of appeal.[7]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

---

[7] The BAP Clerk's Office notified the parties that the § 523(a)(2) and (a)(6) claims remained outstanding and neither the Memorandum Decision nor the judgment contained an express determination that there is no just reason for delay or a direction to enter final judgment on fewer than all claims. Patrick moved the court for Civil Rule 54(b) certification. The court issued an order for final judgment on February 22, 2016.

8

§§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting summary judgment in favor of Daniel and Sally under § 523(a)(4) by applying issue preclusion to the California Order.[8]

## STANDARDS OF REVIEW

We review "the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error[.]" Hedlund v. Educ. Res. Inst. Inc., 718 F.3d 848, 854 (9th Cir. 2013) (quoting Miller v. Cardinale (In re DeVille), 361 F.3d 539, 547 (9th Cir. 2004)).

"We review rulings regarding rules of res judicata, including claim and issue preclusion, de novo as mixed questions of law and fact in which legal questions predominate." Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007) (citations omitted). "Once it is determined that preclusion doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion." Id. (citations omitted).

---

[8] Daniel and Sally argue that nondischargeability is proper under § 523(a)(2) and (a)(6). However, the bankruptcy court held that the California Order did not satisfy the elements necessary for issue preclusion under those sections, and neither party appealed that portion of the Memorandum Decision. Accordingly, we do not address § 523(a)(2) or (a)(6).

9

**DISCUSSION**

**A. The superior court judgment cannot be discharged under § 523(a)(4) if Patrick breached his fiduciary duty to Michael by committing fraud or defalcation.**

Section 523(a)(4) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

§ 523(a)(4).

Under Ninth Circuit law, "[t]o prevail on a nondischargeability claim under § 523(a)(4) the plaintiff must prove not only the debtor's fraud or defalcation, but also that the debtor was acting in a fiduciary capacity when the debtor committed the fraud or defalcation." Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011); see Nahman v. Jacks (In re Jacks), 266 B.R. 728, 735 (9th Cir. BAP 2001) ("The creditor must establish three elements for nondischargeability under this provision: (1) an express trust; (2) that the debt was caused by fraud or defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created."). The United States Supreme Court has held that defalcation has a specific meaning that requires "bad faith, moral turpitude, or other immoral conduct," or "an intentional wrong." Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1759-60 (2013).

**B. The bankruptcy court did not err in applying issue preclusion to the California Order.**

The question before the Panel is whether the California

10

Order can be given issue preclusive effect such that it precludes relitigation before the bankruptcy court of the issues pertinent to the § 523(a)(4) claim.

A bankruptcy court may rely on the issue preclusive effect of an existing state court judgment as the basis for granting summary judgment. See In re Khaligh, 338 B.R. at 831-32. The usual rules of issue preclusion apply in dischargeability litigation. Grogan v. Garner, 498 U.S. 279, 284-85 (1991).

Under the full faith and credit statute, federal courts must give state court judgments the same preclusive effect that a state court would. See 28 U.S.C. § 1738; Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). To determine the preclusive effect of a state court judgment, federal courts apply the preclusion law of the state in which the judgment was entered. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); DiRuzza v. Cty. of Tehama, 323 F.3d 1147, 1152 (9th Cir. 2003).

Here, although the bankruptcy proceedings were held in Arizona, the conservatorship proceedings took place in California, and the California Order was issued by the California superior court. Therefore, California law on issue preclusion applies.

**1. California law on issue preclusion**

In California, issue preclusion prevents parties from relitigating issues already decided in prior proceedings. Lucido v. Super. Ct., 51 Cal. 3d 335, 341 (1990). The party asserting issue preclusion must prove five elements. First, the issues to be precluded must be identical to the ones decided in the prior

11

proceeding.  Second, the issues must have been actually litigated in the prior proceeding.  Third, the issues must have been necessarily decided.  Fourth, the decision must have been final and on the merits.  Finally, the party to be precluded must be identical to or in privity with a party to the prior proceeding. Id.

The party asserting issue preclusion has the burden of establishing each element.  "To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and the exact issues litigated in the prior action.  Any reasonable doubt as to what was decided in the prior action will weigh against applying issue preclusion."  Brandstetter v. Derebery (In re Derebery), 324 B.R. 349, 353 (Bankr. C.D. Cal. 2005) (citing Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995)).

The doctrine of issue preclusion is not mechanically applied.  Instead, the court must apply it when it advances three policies: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation."  Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am., 133 Cal. App. 4th 1319, 1333 (2005).

**2.    Preclusive effect of the California Order**

**a.    Are the issues identical?**

The first prong of the issue preclusion test requires a comparison of the issues presented in the current case with the

12

issues presented in the prior case that resulted in the judgment. The bankruptcy court held that the California Order established the requisite elements of defalcation under § 523(a)(4). We find no error.

A debt is nondischargeable under § 523(a)(4) if the creditor establishes: (1) an express trust; (2) that the debt was caused by fraud or defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created. In re Jacks, 266 B.R. at 735. The relevant terms have specific meanings and are narrowly construed. "[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996). Additionally, defalcation requires "bad faith, moral turpitude, or other immoral conduct," or "an intentional wrong." Bullock, 133 S. Ct. at 1759-60.

The bankruptcy court engaged in a thorough comparison of the California Order and the elements of § 523(a)(4). It concluded that the California Order established the necessary elements for defalcation under § 523(a)(4). It said:

> all three of the elements of § 523(a)(4) have been ruled upon by the State Court: there is an express trust; the Debtor was trustee of the trust; the Debtor committed defalcation when, acting in bad faith, he took, concealed and disposed of trust property for his own benefit and profit and to the detriment of Michael as beneficiary.

We agree with the court's analysis. Patrick does not challenge this aspect of the bankruptcy court's ruling.

Rather, Patrick argues that issue preclusion is inapplicable because the superior court did not make a determination of

13

nondischargeability. This argument is nonsensical. The superior court had no reason to consider and rule on whether its ruling would result in a nondischargeable debt in bankruptcy. Rather, issue preclusion concerns whether the elements of the claims decided by the state court are the same as the elements of the claims to be decided by the bankruptcy court.

Accordingly, the issues are identical, and the first prong is satisfied.

### b. Were the issues actually litigated?

An issue is "actually litigated" when the issue was raised, actually submitted for determination, and determined. <u>Baker v. Hull</u>, 191 Cal. App. 3d 221, 226 (1987). Courts also consider whether the party to be estopped had a "full and fair opportunity" to litigate the issue. <u>Gottlieb v. Kest</u>, 141 Cal. App. 4th 110, 148 (2006).

Patrick argued to the bankruptcy court that the California Order was not actually litigated, because he largely did not participate in the conservatorship proceedings after 2010 and did not answer the Amended Petition or appear at the hearing on the Amended Petition. The court held that, even though the California Order was a default judgment, the issues were actually litigated.[9]

---

[9] Patrick makes only a passing argument that a default judgment is not afforded issue preclusive effect. It is not clear whether he is challenging the bankruptcy court's ruling in this respect. In any event, California law is clear that, unlike the majority rule, it "accords collateral estoppel effect to default judgments, at least where the judgment contains an express finding on the allegations." <u>Gottlieb</u>, 141 Cal. App. 4th
(continued...)

14

### i.  Defective service

On appeal, Patrick merely argues in passing that there is no evidence that he was personally served with the Amended Petition. However, he did not identify where he made this argument before the bankruptcy court.  We will not consider issues raised for the first time on appeal.  See Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts.").

Moreover, he fails to provide any legal authority or citation to the record substantiating his claim that he was not properly served with the Amended Petition.  See Christian Legal Soc. Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 487 (9th Cir. 2010) (An appellate court "won't consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.  Applying this standard, we've refused to address claims that were only argue[d] in passing, or that were bare assertion[s] . . . with no supporting argument.").

Even if this issue was properly before us on appeal, we would find no error.  Patrick does not deny that the original petition was properly served on him.  Nor does he offer any authority that service by mail is ineffective for an amended petition.  Cf. Cal. Civ. Proc. Code § 471.5(a) ("If the complaint is amended, a copy of the amendments shall be filed, or the court may, in its discretion, require the complaint as amended to be

---

[9](...continued)
at 149.

15

filed, and a copy of the amendments or amended complaint must be served upon the defendants affected thereby."); <u>Student A. ex rel. Mother of Student A. v. Metcho</u>, 710 F. Supp. 267, 268-69 (N.D. Cal. 1989) (Under California Code of Civil Procedure § 1013(a), service is complete "upon deposit of the amended complaint in the mail . . . ."). We discern no error concerning the service of the Amended Petition.

## ii.  Fraud and fiduciary obligations

Patrick also baldly argues that "the issue of whether Patrick Lazzari committed fraud or otherwise breached his fiduciary obligation was never actually litigated or decided in the California State Court actions." He again fails to expand on this argument or cite any evidence or authority. To the contrary, the bankruptcy court engaged in a detailed analysis of the elements of § 523(a)(4) and concluded that the defalcation element was satisfied by the California Order, while the fraud element was not.

## iii. Validity of the Disclaimer

Patrick further contends that the superior court did not determine Michael's competency at the time that he signed the Disclaimer or the validity of the Disclaimer itself. He argues that if Michael were competent and the Disclaimer were valid, then he did not owe Michael a fiduciary duty and could not have breached that duty as required by § 523(a)(4).

Patrick is mistaken on a basic level. The superior court did not need to make an explicit finding as to Michael's competence; even if Michael were competent, Patrick was not free to injure him or act against his interests. Moreover, the

16

superior court did determine that the Disclaimer was invalid in its March 10, 2011 order. It held that the transfer of Michael's interest in the Bassillio Trust "via Beneficiary Disclaimer and Renunciation was void ab initio, that Patrick Lazzari never rightfully held ownership of Michael Lazzari's interest and personal property, and that Patrick Lazzari has been holding Michael Lazzari's one-half of the property as constructive trustee." The superior court recognized and reaffirmed its March 10, 2011 order in the California Order, stating that the transfer via the Disclaimer "was found void ab initio . . . ." Thus, the superior court made an express determination that the Disclaimer and transfer of the San Francisco Property were invalid.

Accordingly, the second requirement is satisfied.

### c. Were the issues necessarily decided?

An issue was "necessarily decided" if the issue was not "entirely unnecessary" to the judgment in the prior proceeding. Lucido, 51 Cal. 3d at 342. The parties do not dispute that the issues before the superior court were necessarily decided. Accordingly, the third prong is satisfied.

### d. Is the judgment final and on the merits?

A judgment is the final determination of the rights of the parties in an action. Cal. Code Civ. P. § 577. In California, a judgment is "final" when it terminates the litigation between the parties on the merits and leaves nothing else to do except enforce the judgment. Sullivan v. Delta Air Lines, Inc., 15 Cal. 4th 288, 304 (1997). The parties here do not dispute that the California Order was a final judgment.

17

To the extent Patrick is arguing that the California Order was a default judgment and therefore not decided on the merits, we reject this argument for the reasons stated above. The superior court engaged in a detailed analysis of the alleged breach of fiduciary duty. As the bankruptcy court noted, the decision was made on the merits, because "[n]othing in the record suggests that the State Court decided the matter solely on procedural grounds." We agree. The fourth requirement is thus satisfied.

### e. Were the parties identical?

The parties to this appeal were parties to the conservatorship proceeding before the superior court. As such, the fifth requirement is satisfied.

### 3. Incentive to litigate

Finally, Patrick argues that issue preclusion is inappropriate and the California Order cannot be used against him, because he lacked an incentive to litigate in the superior court. We reject this argument.

"At its heart, the decision to apply issue preclusion entails a measure of discretion and flexibility." Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 107 (9th Cir. BAP 2007). A court can refuse to apply issue preclusion when there are "unfair circumstances" concerning the full and fair opportunity to litigate, including when "the defendant had no incentive to vigorously litigate the issue in the prior action, particularly if the second action is not foreseeable." Roos v. Red, 130 Cal. App. 4th 870, 880 (2005) (citation and internal quotation marks omitted); see Shawhan v.

18

<u>Shawhan (In re Shawhan)</u>, BAP No. NV-08-1049-JuKuK, 2008 WL 8462964, at *6 (9th Cir. BAP July 7, 2008) ("Equitable circumstances may justify not applying the doctrine.  Such circumstances may occur . . . when there is an inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.").

Here, Patrick claimed that he had no incentive to litigate in the superior court because he assumed that he could discharge his debt through bankruptcy.  However, as the bankruptcy court pointed out, his incentive to litigate was evident: his amended chapter 13 plan called for the sale of the San Francisco Property to pay his creditors.  He should have known that, if he lost the superior court litigation, he would have no assets with which to fund his chapter 13 plan.  He could not merely assume that he would prevail in the superior court litigation (or that the superior court decision would not affect his bankruptcy case), especially given the years of contentious litigation.

Similarly, Patrick should have known that Daniel and Sally were asking the superior court to rule that Patrick had breached his fiduciary duties and that, if Daniel and Sally prevailed in the superior court, a § 523(a)(4) adversary proceeding would ensue.  <u>Cf.</u> <u>In re Palombo</u>, 456 B.R. 48, 59 (Bankr. C.D. Cal. 2011) (holding that the debtor had incentive to litigate the earlier action, because "the importance of the facts to this litigation was clearly foreseeable at the time of the earlier action which was ongoing, not years earlier. . . . [A]pplication of issue preclusion [to the § 523(a)(4) claim] was plainly foreseeable").  Thus, it is disingenuous to claim that he did not

19

have any incentive to litigate the conservatorship proceedings.

Patrick cites only Harner v. Carlson (In re Carlson), 156 B.R. 582 (Bankr. S.D. Ind. 1992), for the proposition that, when a debtor chooses not to actually litigate factual issues in a prebankruptcy case, collateral estoppel should not bar relitigation. But Carlson does not help Patrick's case. The Indiana bankruptcy court merely acknowledged the general rule that, when a party lacked a similar incentive to defend in the earlier case, it cannot be said that the party had a "full and fair opportunity" to litigate the issue. See id. at 584.

Accordingly, Patrick had incentive to participate in the superior court case and had a full and fair opportunity to litigate. It is not inequitable to apply issue preclusion to the California Order.

## CONCLUSION

For the reasons set forth above, the bankruptcy court did not err in affording issue preclusive effect to the California Order and holding Patrick's debt to Daniel and Sally (as Michael's conservators) nondischargeable under § 523(a)(4). Therefore, we AFFIRM.

20