[No. G035099. Fourth Dist., Div. Three. June 26, 2006.]

THE NEWPORT BEACH COUNTRY CLUB, INC., Plaintiff and Respondent, v.
FOUNDING MEMBERS OF THE NEWPORT BEACH COUNTRY CLUB, Defendant and Appellant.

1122

**Counsel**

Morgan, Lewis & Bockius, Anthony Ciasulli, Jeffrey N. Brown, Teresa A. Ascencio, Charles J. Malaret and Salvatore Picariello for Defendant and Appellant.

Dubia, Erickson, Tenerelli & Russo, Dubia, Erickson & Tenerelli, Christian F. Dubia, Jr., and Mark D. Erickson for Plaintiff and Respondent.

 

OPINION

FYBEL, J.—

## I.

### INTRODUCTION

We hold that when a trial court judgment decides a case on two alternate grounds, and the appellate court affirms based on one ground, the judgment is binding under principles of res judicata and collateral estoppel only on the ground addressed by the appellate court. In so holding, we decline to follow *People v. Skidmore* (1865) 27 Cal. 287 (*Skidmore*) because subsequent developments in California law and the trend of decisions have weakened that case's authority to the point where we can conclude it no longer reflects the views of the California Supreme Court. Our holding, which is consistent with the Restatement Second of Judgments and recent California state appellate court authority, leads us to reverse the judgment and remand.

This case is a sequel to our decision in *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944 [135 Cal.Rptr.2d 505] (*Founding Members I*). In *Founding Members I*, the trial court granted summary judgment in favor of The Newport Beach Country Club, Inc. (NBCC), on two grounds. We affirmed based on the first ground, and expressly declined to address the second. In this case (*Founding Members II*), the trial court granted summary judgment in favor of NBCC on the second ground. Relying on *Skidmore*, the trial court concluded the second ground had been resolved under principles of res judicata and collateral estoppel by our decision in *Founding Members I*. Because, as we now hold, the judgment in *Founding Members I* is binding only on the ground actually decided in that decision, we reverse and remand.

## II.

### FACTS AND PROCEDURAL HISTORY

In *Founding Members I*, an unincorporated association of country club members known as the Founding Members of The Newport Beach Country Club (Founding Members) sued NBCC, to enforce a "Right of First Offer"

contained in NBCC's governing regulations.[1] (*Founding Members I, supra,* 109 Cal.App.4th at p. 947.) Founding Members alleged a proposed sale in October 1999 of the stock of IBC, Inc. (IBC), which owned NBCC, triggered Founding Members' rights under the Right of First Offer to Purchase NBCC.

The trial court in *Founding Members I* construed the Right of First Offer as extending only to a " 'Member Organization . . . in existence.' " (*Founding Members I, supra,* 109 Cal.App.4th at p. 948.) The trial court granted summary judgment in favor of NBCC on two grounds: (1) no such member organization existed on the date of the proposed sale that Founding Members asserted triggered the Right of First Offer; and (2) the proposed sale of IBC's stock did not trigger the Right of First Offer. (*Id.* at p. 952.)

We affirmed based on the first ground only. We agreed with the trial court's construction of the Right of First Offer as extending only to a member organization in existence when the triggering event occurred, and concluded: "Because the undisputed facts revealed that neither Founding Members nor any member organization, as referred to in the governing regulations, existed as of the date of the agreement to sell IBC's stock, NBCC had no obligations under the Right of First Offer. In light of this conclusion, we do not address whether the agreement to sell IBC's stock constituted an agreement to sell 'part or all' of NBCC's 'legal interest in the Club.' " (*Founding Members I, supra,* 109 Cal.App.4th at p. 948.)

In 2003, after we issued our decision in *Founding Members I*, Founding Members registered with NBCC as an organization entitled to exercise the Right of First Offer. NBCC recognized that right, subject to the limitation that Founding Members had no right to exercise the Right of First Offer with

---

[1] The Right of First Offer in the governing regulations, as amended on September 1, 1987, read, in relevant part, as follows: "SECTION 2. *Right of First Offer.* [¶] A. In the event the Owner shall, at any time, desire to offer part or all of its legal interest in the Club for sale . . . , Owner shall first extend the opportunity to purchase such interest in the Club to any organization then in existence composed solely of members or an organization of which at least fifty-one percent (51%) of the members or shareholders are then members of the Club, each of whom shall have advised Owner in writing of his election to become a shareholder or member of such 'Member Organization.' In that event, the proposal will be submitted to such Member Organization in writing, setting forth the terms and conditions on which the Owner would be prepared to sell such interest in the Club. The Member Organization will be given sixty (60) days after receipt of the written offer to enter into an unconditional, binding contract with the Owner to purchase such interest in the Club on the terms and conditions proposed, with the sale to close not later than ninety (90) days thereafter. . . . [¶] B. In the event that the Member Organization does not exist or, if in existence, such Organization did not agree to purchase the subject interest in the Club on the proposed terms, then the Owner will be free to offer such interest for sale to any other party at an equivalent price and terms or at a greater price and terms as Owner may determine in its sole discretion than offered to the Members Organization."

respect to a sale of the stock of IBC. When Founding Members refused to acknowledge that limitation, NBCC filed this lawsuit for declaratory relief, *Founding Members II*. NBCC's complaint in *Founding Members II* sought a declaration that: (1) "The right of first offer is not triggered and does not apply to a proposed sale of all or a majority of the stock of IBC, parent company of NBCC"; and (2) "The Order and Judgment in [*Founding Members I*] are binding in their entirety on Defendants and establish, through collateral estoppel/*res judicata*, that the Right of First Offer is not triggered and does not apply to a proposed sale of all or a majority of the stock of IBC."

The trial court granted summary judgment in favor of NBCC and decreed: "The Order Granting Summary Judgment in favor of NBCC and against Founding Members in that certain action known as *Founding Members of The Newport Beach Count[r]y Club v. Newport Beach Country Club, Incorporated* (Orange County Superior Court Case No. 01CC10534) is binding upon Founding Members in its entirety, including, without limitation, the conclusion in the Order that the sale of the stock of NBCC's parent corporation, International Bay Clubs, Incorporated, does not trigger the Right of First Offer in Article V, Section 2 of the Governing Regulations." The trial court explained: "In granting this summary judgment, the Court has examined the competing lines of authority on the scope of *res judicata*/collateral estoppel effect to be accorded orders and judgments of trial courts, including the California appellate court decision cited by Founding Members of *Butcher v. Truck Ins. Exchange*, 77 Cal.App.4th 1442 [92 Cal.Rptr.2d 521] (2000). However, this Court ultimately concludes that *Auto Equity Sales v. Superior Court*, 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] (1962), *People v. Skidmore*, [*supra*,] 27 Cal. 287 . . . and the persuasive discussion of California law in *Di[R]uzza v. County of Tehama*, 323 F.3d 1147 (9th Cir. 2003) establish that, under California law, the affirmance of a decision at the trial court level by an appellate court extends binding and legal effect to the whole of the trial court's determination, with attendant collateral estoppel effect."

Founding Members timely appealed from the judgment in favor of NBCC in *Founding Members II*, bringing the matter back to us. The issues presented this time are: (1) Is the judgment affirmed by *Founding Members I* binding on the issue whether a sale of IBC stock triggered the Right of First Offer, even though we did not address that issue in affirming the judgment? and (2) If the first judgment is not binding on that issue, is NBCC entitled to summary

judgment in *Founding Members II* on the issue whether a sale of IBC stock triggered the Founding Members' rights of purchase under the Right of First Offer?

## III.

### DISCUSSION

■ When a trial court judgment decides a case on two alternate grounds, and the appellate court affirms based on one ground, is the judgment binding under principles of res judicata and collateral estoppel on both grounds recited in the judgment, or only on the ground addressed by the appellate court?

There are two contrary lines of authority on this issue. One line, which we call the traditional rule, provides that " '[a] general affirmance of a judgment on appeal makes it *res judicata* as to all the issues, claims, or controversies involved in the action and passed upon by the court below, although the appellate court does not consider or decide upon all of them.' " (*Bank of America v. McLaughlin etc. Co.* (1940) 40 Cal.App.2d 620, 628–629 [105 P.2d 607] (*McLaughlin*), quoting 34 C.J. (1924) Judgments, § 1190, p. 773.) The other line of authority, which we call the modern or Restatement Second rule, provides that " '[i]f the appellant court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.' " (*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1457 [92 Cal.Rptr.2d 521] (*Butcher*), quoting Rest.2d Judgments, § 27, com. *o.*)

### A. *The Traditional Rule*

NBCC advocates the traditional rule, which finds its source in California law in *Skidmore, supra,* 27 Cal. 287. In that case, the parties stipulated that a referee would try the issues of law and fact and "report a judgment thereon." (*Id.* at p. 289.) In the resulting report, the referee found the plaintiff should not recover. (*Id.* at p. 292.) Judgment was entered accordingly, and the plaintiff appealed to the California Supreme Court. The Supreme Court affirmed the judgment, but relied on a procedural issue—misjoinder—to reach its decision. The case eventually returned to the California Supreme Court for a determination whether the plaintiff, having corrected the misjoinder, could sue again. The Supreme Court concluded the referee's report and resulting

judgment, which reached the merits of the case, had been affirmed by the judgment accompanying the previous opinion, despite that opinion's reliance on misjoinder. The plaintiff could not sue again, the Supreme Court held, because: "The Court, in examining the judgment in connection with the errors assigned, found that there was at least one ground upon which the judgment could be justified, and therefore very properly refrained from considering it in connection with the other errors. But the affirmance, still, was an affirmance to the whole extent of the legal effect of the judgment at the time when it was entered in the court below. The Supreme Court found no error in the record, and therefore not only allowed it to stand, but affirmed it as an entirety, and by direct expression." (*Id.* at pp. 292–293.)

In 1940, some 75 years after the *Skidmore* case, the California Court of Appeal for the First District applied the traditional rule in *McLaughlin, supra,* 40 Cal.App.2d 620, in evaluating the collateral estoppel effect of a bankruptcy court judgment that had been affirmed by the federal court of appeals. The bankruptcy court had determined two issues: (1) McLaughlin, a corporation, was not a " 'farmer' " under the terms of the Bankruptcy Act, and (2) McLaughlin was not the owner of the property it claimed to be farming. (*Id.* at p. 625.) The Ninth Circuit Court of Appeals affirmed the judgment based on the first issue alone. (*Ibid.*) In the state court action, the plaintiff bank sued in unlawful detainer following nonjudicial foreclosure of a deed of trust. (*Id.* at pp. 622–624.) The trial court granted a directed verdict in the plaintiff's favor, and the Court of Appeal affirmed the resulting judgment. The Court of Appeal held the bankruptcy court judgment was res judicata on the issue of McLaughlin's ownership of the land: "[The bankruptcy] court, upon issues squarely presented by this appellant, found that appellant was not a farming corporation, and also found that the trustees' sale was valid, that the bank became the owner of the property by purchase at a trustees' sale, and that appellant owned no interest. These findings having been incorporated in the judgment it must be assumed that when the Circuit Court of Appeals affirmed the judgment it became *res judicata* of both the issues tendered and tried." (*Id.* at p. 628.)

The *McLaughlin* court did not cite *Skidmore,* but relied upon 34 Corpus Juris, *supra,* Judgments, section 1190, stating: " 'A general affirmance of a judgment on appeal makes it *res judicata* as to all the issues, claims, or controversies involved in the action and passed upon by the court below, although the appellate court does not consider or decide upon all of them.' " (*McLaughlin, supra,* 40 Cal.App.2d at pp. 628–629.) "From the foregoing," the *McLaughlin* court stated, "it must follow that, when the bankruptcy court determined that the petitioner therein had no interest in the property listed,

such determination became final as to that issue, notwithstanding the fact that the Circuit Court of Appeals, in affirming the judgment, based its conclusions upon the other issue." (*Id.* at p. 629.)

In *DiRuzza v. County of Tehama* (9th Cir. 2003) 323 F.3d 1147, 1156, the Ninth Circuit Court of Appeals confronted the issue whether the traditional rule or the modern rule reflected the law of the State of California. After surveying case authority, including *Butcher, supra*, 77 Cal.App.4th 1442, the Ninth Circuit acknowledged there were "plausible arguments" against the traditional rule, but concluded it remained the law of California: "Until we receive a definitive indication that *Skidmore* no longer represents the law of California, we will adhere to that case's precepts." (*DiRuzza v. County of Tehama, supra,* 323 F.3d at p. 1156.) According to the Ninth Circuit, " '[[t]he California position] is that even if the appellate court refrains from considering one of the grounds upon which the decision below rests, an affirmance of the decision below extends legal effects to the whole of the lower court's determination, with attendant collateral estoppel effect.' " (*Ibid.*)

## B. *The Modern or Restatement Second Rule*

The modern or Restatement Second rule, advocated by Founding Members, was established in California case law by *Butcher, supra*, 77 Cal.App.4th 1442. Its antecedents are much earlier, however, stretching back at least to Judge Augustus Hand's opinion in *Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A.* (2d Cir. 1937) 92 F.2d 37, 40 (*Moran Towing*), certiorari denied (1937) 302 U.S. 744 [82 L.Ed. 575]. In *Moran Towing,* the court declined to adopt the traditional rule, criticizing it as "the height of unreason." (*Ibid.*) "To treat as controlling the findings of a trial court when the appellate court upsets or disregards them and renders a decision of affirmance on different grounds furnishes parties to other litigations affected by the decision a false guide." (*Ibid.*) The better practice, according to *Moran Towing*, is to "look at such evidence as there is to discover the ground of the decision." (*Id.* at pp. 40–41.)

Section 27 of the Restatement Second of Judgments, adopted in 1982, is in agreement with *Moran Towing* and adopts the modern rule. Comment *o* to section 27 states, in relevant part: "If a judgment rendered by a court of first instance is reversed by the appellate court and a final judgment is entered by the appellate court (or by the court of first instance in pursuance of the mandate of the appellate court), this latter judgment is conclusive between the parties. [¶] If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations. . . . [¶] If the appellate court

upholds one of these determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination. [¶] If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination."

In *Butcher*, Division Four of the Second District Court of Appeal adopted the modern rule, holding, "if a court of first instance makes its judgment on alternative grounds and the reviewing court affirms on only one of those grounds, declining to consider the other, the second ground is no longer conclusively established." (*Butcher, supra,* 77 Cal.App.4th at p. 1460.) The facts of *Butcher* are as follows. The insureds turned to their insurer to provide them a defense to a lawsuit for malicious prosecution. The insurer denied a defense, claiming the policy did not provide coverage. The insureds sued the insurer and produced evidence the insurer's agent had misled them into believing he had delivered a policy duplicating coverage (including coverage for malicious prosecution) of a policy from an insurer whose policy was not being renewed. (*Id.* at p. 1446.) The trial court granted summary judgment in favor of the insurer on the ground a prior judgment in a federal court action between the insureds and the former insurer precluded the insureds' claim. (*Ibid.*)

The federal court action was a coverage lawsuit between the insureds and the former insurer. The district court in the federal court action had ruled against the insureds on two alternate grounds: (1) the policy did not cover the type of injury the insureds allegedly suffered, and (2) the claims were based on events occurring outside the policy period. (*Butcher, supra,* 77 Cal.App.4th at p. 1449.) The Ninth Circuit Court of Appeals affirmed the judgment on the second ground alone and refused to consider the first ground. (*Ibid.*)

The issue on appeal in the state court action was whether the federal court judgment was res judicata on both grounds decided by the federal district court. The Court of Appeal reviewed the line of authority supporting the modern rule, including the *Moran Towing* decision and section 27 of the Restatement Second of Judgments, and the line of authority supporting the traditional rule, including *McLaughlin*. The *Butcher* court criticized *McLaughlin*'s reasoning, concluding it "has not withstood the test of time." (*Butcher, supra,* 77 Cal.App.4th at p. 1460.) As the *Butcher* court explained, the rule stated in 34 Corpus Juris, *supra,* Judgments, section 1190, cited and relied upon by *McLaughlin*, "is completely abandoned in the modern work."

(*Butcher, supra,* 77 Cal.App.4th at p. 1459.) Corpus Juris Secundum follows the Restatement Second of Judgments in stating: "In the case of a judgment based on alternative grounds, which is affirmed on only one of the grounds, the ground omitted from the decision is not considered to have been fully adjudicated and is not conclusively established for the purposes of res judicata." (50 C.J.S. (1997) Judgments, § 725, p. 266.) The *Butcher* court explained the other authority relied on in *McLaughlin* (an Ohio appeals court case from 1937) relied on early federal appellate court cases, the most recent of which dated from 1905 and was strongly criticized in *Moran Towing.* (*Butcher, supra,* 77 Cal.App.4th at pp. 1459–1460.)

■ In addition to pointing out the age of the traditional rule, *Butcher* took aim at its wisdom. "[I]t would be unwise," the *Butcher* court stated, "to follow a rule that looks only to the judgments, without taking account of the reasons for those judgments as stated in the appellate courts' opinions." (*Butcher, supra,* 77 Cal.App.4th at p. 1460.) "It is universally recognized that '[a]ppellate review plays a central role in assuring the accuracy of decisions' [citation], and the appellate courts in the federal and state systems are empowered to decide the effect of their judgments." (*Ibid.*)

That criticism of the traditional rule is particularly forceful in this case. Unlike the California appellate courts in *Butcher* and *McLaughlin,* and the Ninth Circuit in *DiRuzza v. County of Tehama,* we wrote the appellate decision in *Founding Members I.* We know we did not decide whether the Right of First Offer was triggered by a proposed sale of IBC's stock and expressly stated, "we do not address whether the agreement to sell IBC's stock constituted an agreement to sell 'part or all' of NBCC's 'legal interest in the Club.' " (*Founding Members I, supra,* 109 Cal.App.4th at p. 948.) To hold now the judgment in *Founding Members I* is res judicata on that issue would be, as Judge Hand put it, "the height of unreason."

C. *We Decline to Follow* Skidmore, *and We Adopt the Modern/Restatement Second Rule*

We would agree with *Butcher* without equivocation, but for one weakness in that decision: *Butcher* did not cite or discuss *Skidmore. Skidmore* is very old—75 years older than *McLaughlin*—and like *McLaughlin* its reasoning has not with stood the test of time. The Restatement Second of Judgments, Corpus Juris Secundum, Judge Augustus Hand's insight, the *Butcher* decision, logic, and reality are all contrary to *Skidmore.* But *Skidmore* is, unlike *McLaughlin,* California Supreme Court authority which, age and reason notwithstanding, NBCC argues we are obliged to follow. (E.g., *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ We do not believe we are bound by *Skidmore* for the following reasons. The California Supreme Court, in questioning the authority of likewise binding United States Supreme Court cases, has recognized "the authority of an older case may be as effectively dissipated by a later trend of decision as by a statement expressly overruling it." (*Sei Fujii v. State of California* (1952) 38 Cal.2d 718, 728 [242 P.2d 617].) In *Adams v. Southern Pac. Transportation Co.* (1975) 50 Cal.App.3d 37, 41 [123 Cal.Rptr. 216], the Court of Appeal declined to follow *Fifield Manor v. Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073], concluding the rule expressed in *Fifield* "is inconsistent with two later developments of California tort doctrine." The Court of Appeal justified this departure from stare decisis by stating: "Principled obedience to the *Fifield* rule need not prevent awareness that it may be ripe for renunciation or limitation. In following a rule of decisional law, an intermediate court of appeal may appropriately analyze the factors which cast doubt upon its viability." (*Adams v. Southern Pac. Transportation Co., supra,* 50 Cal.App.3d at p. 41.)

Later developments in California law certainly draw the viability of *Skidmore* into question and dissipate whatever strength that case once had. Since *Skidmore* was decided in 1865, the law of res judicata has undergone tremendous change culminating in the Restatement Second of Judgments. The California Supreme Court has expressed approval of the Restatement Second of Judgments and has cited approvingly to section 27 and the comments to it. In *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1290, footnote 7 [265 Cal.Rptr. 162, 783 P.2d 749], the court, quoting an administrative law treatise, stated: " 'Perhaps because it rests so much on logic, res judicata is especially appropriate for a Restatement, and the American Law Institute's Restatement of Judgments (1942) has been an unusually powerful force, but it is now succeeded by a second and improved Restatement of Judgments (1982) which focuses mainly on the two subjects of "claim preclusion" and "issue preclusion." ' " (See also *County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 879, fn. 7 [13 Cal.Rptr.2d 53, 838 P.2d 781] [citing Rest.2d Judgments, § 27, com. h]; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3 [272 Cal.Rptr. 767, 795 P.2d 1223] [citing § 27]; *People v. Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321] [citing § 27, com. d].)

The Supreme Court's acceptance of the Restatement Second of Judgments undercuts *Skidmore,* if not impliedly overruling it. The Supreme Court has never confirmed *Skidmore.* In *Martin v. Martin* (1970) 2 Cal.3d 752, 763 [87 Cal.Rptr. 526, 470 P.2d 662], the court found it unnecessary to address the issue whether a judgment is conclusive only on the ground affirmed by an appellate court decision. (See *Pitts v. City of Sacramento* (2006) 138 Cal.App.4th 853, 858, fn. 7 [41 Cal.Rptr.3d 838] [declining to resolve whether "scholarly opinion" in *Butcher* was correct].)

The traditional rule is inconsistent with an appellate court's duty under the California Constitution, article VI, section 14 to set forth its decisions in writing "with reasons stated." Giving conclusive effect to both of two alternate grounds for a judgment, when the Court of Appeal expressly declines to address one ground, undermines the credibility and accuracy of the decision. To comply with the constitutional mandate, and to avoid unintended collateral estoppel consequences under the traditional rule, the appellate court would have to address every ground recited in a judgment, even though a decision on one ground would resolve the dispute before the court. The traditional rule thus results in judicial inefficiency.

We find no justification for being bound by *Skidmore*. As Justice Holmes argued in a similar context: "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." (Holmes, *The Path of the Law* (1897) 10 Harv. L.Rev. 457, 469.)

We believe the California Supreme Court, if faced with the issue today, would adopt the modern rule expressed in comment *o* to the Restatement Second of Judgments, section 27. We therefore adopt the modern/Restatement Second rule and, agreeing with *Butcher*, hold that "if a court of first instance makes its judgment on alternative grounds and the reviewing court affirms on only one of those grounds, declining to consider the other, the second ground is no longer conclusively established." (*Butcher, supra,* 77 Cal.App.4th at p. 1460.)

D. *Proceedings on Remand*

The trial court felt obliged to follow *Skidmore* and granted summary judgment based on collateral estoppel without resolving the issue whether the Right of First Offer is triggered by a sale of the stock of IBC. We believe the trial court should initially decide whether there are triable issues of undisputed fact on whether a sale of IBC's stock triggered the Founding Members' rights of purchase under the Right of First Offer and whether NBCC is entitled to judgment as a matter of law. Although the parties thoroughly briefed that issue, we believe the trial court should have the first opportunity to consider the evidence, rule on the evidentiary objections, identify triable issues of facts, if any, and present us with a reviewable record. (See *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235–236, 238 [114 Cal.Rptr.2d 151].) In construing the Right of First Offer, the trial court should be guided by the principles of contract interpretation set forth in *Founding Members I, supra,* 109 Cal.App.4th at pages 954–962.

## IV.

### DISPOSITION

The judgment is reversed and the matter remanded for the trial court to decide NBCC's summary judgment motion with respect to the issue whether the Right of First Offer is triggered by the sale of the stock of IBC.

Bedsworth, Acting P. J., and Ikola, J., concurred.