FILED

JAN 05 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )     BAP No.   CC-16-1075-TaFMc
                                          )
TERRANCE ALEXANDER TOMKOW,                )     Bk. No.   2:13-bk-19712-WB
                                          )
              Debtor.                     )     Adv. No.  2:13-ap-01751-WB
_____        )
                                          )
TERRANCE ALEXANDER TOMKOW;                )
                                          )
              Appellant,                  )
                                          )
v.                                        )
                                          )
KENNETH BARTON,                           )
                                          )
              Appellee.                   )
_____        )
                                          )
In re:                                    )     BAP No.   CC-16-1076-TaFMc
                                          )
ZAFAR DAVID KHAN,                         )     Bk. No.   2:13-bk-19713-WB
                                          )
              Debtor.                     )     Adv. No.  2:13-ap-01752-WB
_____        )
                                          )
ZAFAR DAVID KHAN,                         )
                                          )
              Appellant,                  )
                                          )
v.                                        )     **MEMORANDUM**[*]
                                          )
KENNETH BARTON,                           )
                                          )
              Appellee.                   )
_____        )

Argued and Submitted on October 21, 2016
at Pasadena, California

Filed – January 5, 2017

_____

[*]    This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia Wagner Brand, Bankruptcy Judge, Presiding

---

Appearances: Lewis R. Landau on behalf of appellants Terrance Alexander Tomkow and Zafar David Khan; Patrick C. McGarrigle of McFarrigle, Kenney & Zampiello, APD on behalf of appellee Kenneth Barton.

---

Before: TAYLOR, FARIS, and MCKITTRICK,[**] Bankruptcy Judges.

## INTRODUCTION

Appellants[1] Terrance Tomkow and Zafar Khan appeal from two orders: (1) an order granting summary judgment in favor of Kenneth Barton determining that a California state court judgment against them was nondischargeable under § 523(a)(2)(A)[2] and (a)(6); and (2) an order denying their subsequent motion for direct appeal certification to the Ninth Circuit.

Binding Ninth Circuit authority controls our decision here; we AFFIRM the bankruptcy court's orders.

---

[**] The Hon. Peter C. McKittrick, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

[1] Appellants submitted two separate briefs on appeal. The briefs are identical, save for an additional paragraph in Tomkow's brief at page 19, lines 7-22.5 (and references to Appellant's name and record citation). As discussed in this memorandum, we conclude that the argument addressed in that paragraph lacks merit. We address both appeals in this memorandum. The BAP Clerk of Court is instructed to enter this disposition in both appeals.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

**FACTS**

During the late 1990s, Appellants and Barton co-founded start-up companies including RIL, which owned or controlled various patents relating to authentication and verification of emails and electronic payments. Barton later suffered a stroke and was sidelined from active involvement in the businesses. Afterward, his relationship with Appellants deteriorated to the point that he commenced state court litigation seeking unpaid compensation and reimbursement of expenses.

During that litigation, Barton discovered that Appellants had taken control of his 6,016,500 common stock shares in RIL and returned them to the company treasury, thereby divesting him of an equity interest in the company. In response, he commenced a second action against Appellants and RIL, among others, in California state court alleging causes of action including conversion and fraud.

The state court ruled in Barton's favor on both the conversion and fraud causes of action and against Appellants and RIL. It determined that Appellants had acted with malice, oppression, and fraud and, thus, that Barton was entitled to punitive damages. The state court then conducted a second phase of trial to quantify punitive damages.

Following the parties' submission of the punitive damages issue to the state court, Appellants each filed a chapter 13 petition.

In a revised statement of decision and ruling on punitive damages, the state court awarded Barton the value of his

3

converted stock in RIL.[3] It ultimately entered an amended judgment awarding Barton compensatory damages in the amount of $2,840,060, damages for emotional distress, and $880,021.91 in prejudgment interest. For punitive damages, the state court awarded $250,000 against Khan and $150,000 against Tomkow. In so doing, it found that Khan and Tomkow acted with malice, oppression, and fraud. Appellants appealed from the state court judgment to the California Court of Appeal.

In the meantime, Barton filed an adversary complaint against Appellants in the bankruptcy court, seeking a nondischargeability determination under § 523(a)(2)(A), (a)(4), and (a)(6) based on the state court judgment.

The California Court of Appeal subsequently affirmed the state court's determination of Appellants' liability based on conversion. But, because the determination of liability was supported by substantial evidence, it did "not consider whether [Appellants] were additionally liable under theories of fraud, breach of fiduciary duty and unfair competition." It affirmed the punitive damages award based on a finding of malice and deceit. The California Supreme Court denied Appellants' petition for review of the appellate court's decision. Thus, that decision is now final. In response, Barton moved for summary judgment on his nondischargeability complaint in the bankruptcy court.

---

[3] Based on stipulations between Barton and Appellants, the bankruptcy court entered orders granting stay relief to proceed in the state court action. See 2:13-bk-19713-WB, Dkt. Nos. 9, 16; 2:13-bk-19712-WB, Dkt. Nos. 9, 16.

Appellants opposed the motion. They asserted primarily that pursuant to Zevnik v. Superior Court, 159 Cal. App. 4th 76 (2008), where a trial court decided a case based on alternate grounds and the court of appeal affirmed on only one of those grounds, issue preclusion was available only on the ground affirmed by the appellate court. Appellants pointed out that the California Court of Appeal had affirmed the state court judgment only on Barton's conversion claim under California law; thus, they argued, the state court judgment was not entitled to issue preclusion based on the state court's ruling of fraud or breach of fiduciary duty in relation to the § 523(a)(2)(A) or (a)(4) claims. At best, Appellants contended, the state court judgment for conversion potentially supported a claim under § 523(a)(6). But, even then, they asserted, Barton barely addressed the conversion claim in his motion for summary judgment. And, they noted, conversion under California law did not establish a § 523(a)(6) claim conclusively. Appellants also argued that the punitive damages award on the conversion claim, to the extent affirmed on appeal, fell short of establishing a § 523(a)(6) claim. Finally, Tomkow argued that Barton neglected to address the fact that, with respect to the punitive damages award, there was a difference in liability between Khan and Tomkow; namely, the amount of damages assessed against Appellants reflected a difference in the level of culpability.

In response, Barton argued that binding Ninth Circuit precedent - DiRuzza v. County of Tehama, 323 F.3d 1147 (9th Cir. 2003) - established that the California Court of Appeal's affirmance of any ground contained in the state court judgment

5

implicitly ratified all of the trial court's reasoning in the judgment.

At the hearing, the bankruptcy court determined that the state court judgment was entitled to issue preclusive effect for the § 523(a)(2)(A) and (a)(6) claims and, thus, granted summary judgment in Barton's favor on them. It, however, denied the motion as to the § 523(a)(4) claim. In response, Appellants' counsel requested direct appeal certification to the Ninth Circuit. The bankruptcy court agreed that additional briefing and a hearing on Appellants' request were warranted.

The bankruptcy court then entered judgments determining that, with the exception of the damages award for emotional distress, the state court judgment was excepted from Appellants' discharges under § 523(a)(2)(A) and (a)(6). Appellants timely appealed.

Appellants made good on their request and filed a motion for direct appeal certification. They stated that the bankruptcy court "understandably rejected application of the Zevnik rule based on a Ninth Circuit decision [DiRuzza] predating Zevnik and that applied the 1865 California Supreme Court's Skidmore case." As a result of DiRuzza, they urged the bankruptcy court to certify the appeal directly to the Ninth Circuit under 28 U.S.C. § 158(d)(2)(A); they opined that the Ninth Circuit could and would then certify the question to the California Supreme Court.

Barton opposed the motion, and the bankruptcy court agreed with him. It concluded at a subsequent hearing that Appellants had not satisfied 28 U.S.C. § 152(d)'s requirements for direct

6

appeal certification. It believed that the law in the Ninth Circuit was clear and that there was no dispute requiring resolution among the California courts. The bankruptcy court noted that the Ninth Circuit had considered and rejected the Zevnik analysis in DiRuzza and that the California Supreme Court also had, but declined, the opportunity to revisit the issue.

The bankruptcy court subsequently entered an order denying Appellants' motion. Appellants amended their notice of appeal to include this order.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Whether the bankruptcy court erred in granting summary judgment in Barton's favor on his § 523(a)(2)(A) claim based on the issue preclusive effect of the fraud claim in the state court judgment, given that the California Court of Appeal affirmed that judgment on another ground.

2. Whether the bankruptcy court erred in granting summary judgment in Barton's favor on his § 523(a)(6) claim based on the issue preclusive effect of the state court judgment.

3. Whether the bankruptcy court erred in denying Appellants' motion for direct appeal certification to the Ninth Circuit.

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decisions to grant summary judgment and to except a debt from discharge under

7

§ 523(a). See Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221-22 (9th Cir. 2010); Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009); see also Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002) (nondischargeability presents mixed issues of law and fact and is reviewed de novo).

We also review de novo the bankruptcy court's determination that issue preclusion was available. Black v. Bonnie Springs Family Ltd. P'Ship (In re Black), 487 B.R. 202, 210 (9th Cir. BAP 2013). If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applies the wrong legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We may affirm the decision of the bankruptcy court on any basis supported by the record. See Hooks v. Kitsap Tenant Support Servs., Inc., 816 F.3d 550, 554 (9th Cir. 2016).

## DISCUSSION

### A. Standards

**Summary judgment.** Summary judgment is appropriate where the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (applicable in adversary proceedings under

8

Rule 7056). The bankruptcy court must view the evidence in the light most favorable to the non-moving party when determining whether genuine disputes of material fact exist and whether the movant is entitled to judgment as a matter of law. See Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). And, it must draw all justifiable inferences in favor of the non-moving party. See id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

**Issue preclusion in a nondischargeability proceeding.** The bankruptcy court may give issue preclusive effect to a state court judgment as the basis for excepting a debt from discharge. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). The party asserting preclusion bears the burden of establishing the threshold requirements. Id. This means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). Ultimately, "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." Id.

We apply the forum state's law of issue preclusion when determining if issue preclusion is appropriate based on a state court judgment. In re Harmon, 250 F.3d at 1245. Here we must apply California law.

**California issue preclusion.** California permits application of issue preclusion to an existing judgment: (1) after final adjudication; (2) of an identical issue;

9

(3) actually litigated in the former proceeding; (4) necessarily decided in the former proceeding; and (5) asserted against a party in the former proceeding or someone in privity with a party. See DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 825 (2015). In addition, the court must determine that issue preclusion "furthers the public policies underlying the doctrine." In re Harmon, 250 F.3d at 1245 (citing Lucido v. Super. Ct., 51 Cal. 3d 335, 342–42 (1990)); see also Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 824-25 (9th Cir. BAP 2006).

**B.  Based on binding Ninth Circuit authority, the bankruptcy court appropriately gave issue preclusive effect to the fraud claim in the state court judgment; thus, it did not err in granting summary judgment in Barton's favor on his § 523(a)(2)(A)[4] claim.**

Appellants focus the majority of their appellate arguments on one narrow issue: whether the bankruptcy court could give issue preclusive effect to the state court judgment's fraud determination, given that the California Court of Appeal did not review that aspect of the judgment on appeal. They acknowledge that under Ninth Circuit authority, DiRuzza, the entire judgment is subject to issue preclusion. They contend, however, that the law in California has developed in the past 15 years such that the Ninth Circuit's decision no longer correctly reflects California law.

Based on an early California Supreme Court case, DiRuzza adhered to the "general California rule" that, "even if the

---

[4] The elements for actual fraud under California law match those of § 523(a)(2)(A). See Tobin v. Sans Souci Ltd. P'ship (In re Tobin), 258 B.R. 199, 203 (9th Cir. BAP 2001).

10

appellate court refrains from considering one of the grounds upon which the [trial court's] decision . . . rests, an affirmance of the decision below extends legal effects to the whole of the lower court's determination, with attendant collateral estoppel effect." 323 F.3d at 1156. We acknowledge that subsequent California Courts of Appeal decisions have disagreed with DiRuzza and make compelling arguments in support of their position to the contrary. That said, DiRuzza remains controlling precedent in our circuit. Consequently, we conclude that issue preclusion was available and that the bankruptcy court did not abuse its discretion in giving preclusive effect to the fraud determination in the state court judgment.

**1.     The general California (or traditional) rule**.

At the outset, we note that an unpublished federal district court case - Flying J, Inc. v. Pistacchio, 2008 WL 906396, at *33-43 (E.D. Cal. Mar. 31, 2008), aff'd, 351 F. App'x 236 (9th Cir. 2009) - provides a highly detailed overview of the pertinent cases, including DiRuzza, People v. Skidmore, 27 Cal. 287 (1865), and the three California Courts of Appeal cases that Appellants contend have changed the legal landscape in California: Zevnik, 159 Cal. App. 4th 76; Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club, 140 Cal. App. 4th 1120 (2006); and Butcher v. Truck Insurance Exchange, 77 Cal. App. 4th 1442 (2000).

A brief description of these cases as they relate to the general California rule follows.

**DiRuzza**. The Ninth Circuit examined whether issues decided by a California trial court and crucial to its decision were

11

entitled to preclusive effect after the court of appeal affirmed on different grounds. 323 F.3d at 1153. The Ninth Circuit acknowledged that California case law addressing the issue was sparse but that Skidmore, a venerable California Supreme Court case, "support[ed] the conclusion that an appellate court's affirmance for any reason implicitly ratifie[d] all reasoning given in the court below." Id. In doing so, it noted that "a nebulous exception to the rule and a recent California appellate decision [Butcher] cut against the timeworn precedent and may counsel in favor of more selective application of collateral estoppel principles." Id. It concluded, however, that Skidmore was controlling because the California Supreme Court had not "undermin[ed] the authority of its early holding" and notwithstanding Butcher's analysis. Id.

**Skidmore**. As explained in DiRuzza, Skidmore involved a judgment in favor of defendant. On initial appeal, the California Supreme Court "affirmed the judgment, but relied upon a procedural issue—misjoinder[—]in reaching its decision." This issue was corrected and the case made its way to the court a second time, for a determination as to whether the plaintiff could pursue the action again. "The court determined that, regardless of its previous opinion's reliance on the misjoinder issue, the . . . [underlying recommendation] report and resulting judgment, which reached the merits of the case, had been affirmed by the judgment accompanying [its] previous opinion." Id. at 1154. Thus, the California Supreme Court determined, the plaintiff was precluded from bringing the action a second time, "as the merits of the case had already been

12

adjudicated . . . ."  Id.  The Ninth Circuit quoted the following language from Skidmore:

> The Court, in examining the judgment in connection with the errors assigned, found that there was at least one ground upon which the judgment could be justified, and therefore very properly refrained from considering it in connection with the other errors. But the affirmance, still, was an affirmance to the whole extent of the legal effect of the judgment at the time when it was entered in the court below.  The Supreme Court found no error in the record, and therefore not only allowed it to stand, but affirmed it as an entirety, and by direct expression.

Id. at 1154-55 (quoting 27 Cal. at 292-93).

Subsequent courts have referred to this rule as the general California rule, the Skidmore rule, or the traditional rule.

**Skidmore's "progeny."**  Following Skidmore, two decisions were issued that bear mention based on subsequent case law discussion: Bank of America National Trust & Savings Association v. McLaughlin Land & Livestock Co. ("McLaughlin"), 40 Cal. App. 2d 620 (1940), and Natural Soda Products Co. v. City of Los Angeles, 109 Cal. App. 2d 440 (1952).

As noted by Flying J, 2008 WL 906396 at *35, McLaughlin reached the same conclusion as Skidmore, although it did not refer to Skidmore.  Instead, McLaughlin relied on a rule expounded in the Corpus Juris Secundum ("CJS"), providing that "[a] general affirmance of a judgment on appeal makes it res judicata as to all the issues, claims, or controversies involved in the action and passed upon by the court below, although the appellate court does not consider or decide upon all of them." 40 Cal. App. 2d at 628-29 (quoting 34 C.J. 773).  Thus, the McLaughlin panel determined that, where the ruling of the district court (sitting as the bankruptcy court) was predicated

13

on two alternate grounds and the Ninth Circuit affirmed the decision on the first ground, the district court's entire decision was entitled to preclusive effect.  Id. at 629.

Natural Soda reiterated the general rule delineated by Skidmore and McLaughlin.  In doing so, however, it stated that "the rule [was] not without exceptions, and where a finding [was] unnecessary and immaterial the rule of collateral estoppel [did] not operate."  109 Cal. App. 2d at 446.

As the Ninth Circuit in DiRuzza observed, "[a]fter Natural Soda, all was generally quiet on the [issue preclusion] front in the courts of California for almost fifty years."  323 F.3d at 1156.  Enter Butcher.

**The trilogy of recent California Courts of Appeal cases and the "modern" rule.**

**Butcher**.  As noted by DiRuzza, 323 F.3d at 1156, Butcher made no reference to Skidmore at all.  There, a panel of the Second District Court of Appeal examined the preclusive effect of a federal court judgment based on diversity jurisdiction in an insurance coverage action.  It noted that there were two lines of cases: (1) cases following "the rule that the appellate court in the prior action determines the preclusive effect of its judgment, i.e., the judgment [was] conclusive on the [] ground" affirmed by the appellate court, as reflected in Moran Towing & T. Co. v. Navigazione Libera Triestina, S.A., 92 F.2d 37 (2d Cir. 1937), and the Restatement (Second) of Judgments; and (2) cases holding "that it [was] the judgment of the trial court, which [was] affirmed, that governs the preclusive effect, i.e., the judgment [was] conclusive on both grounds," as

14

reflected in McLaughlin. 77 Cal. App. 4th at 1456.

The first line of cases relies heavily on the Restatement (Second) of Judgments § 27[5] and embodies the "modern" approach approved of by the three California Courts of Appeal decisions. The Butcher panel observed that the rule cited by the McLaughlin panel, based on the CJS, was subsequently abandoned in favor of the rule followed by the Second Restatement. It, thus, "conclude[d] [that] the reasoning of the McLaughlin court has not withstood the test of time, and it would be unwise to follow a rule that looks only to the judgments, without taking account of the reasons for those judgments as stated in the appellate courts' opinions." Id. at 1460.

The Ninth Circuit, in DiRuzza, concluded that while

> Butcher advance[d] plausible arguments against the general California rule, . . . it [came] from an intermediate appellate court which failed to acknowledge that the California Supreme Court, in Skidmore, had addressed the subject. Until we receive a definitive indication that Skidmore no longer represents the law of California, we will adhere to that case's precepts.

323 F.3d at 1156. The Ninth Circuit, thus, rejected the Butcher panel's analysis.

**Newport Beach Country Club**. Newport Beach, decided by a panel of the Fourth District Court of Appeal, was issued three years after DiRuzza. The Newport Beach panel held that, where

---

[5] The Restatement (Second) of Judgments § 27 comment o (1982) provides that when "a judgment rendered by a court of first instance is reversed by the appellate court and a final judgment is entered by the appellate court (or by the court of first instance in pursuance of the mandate of the appellate court), this latter judgment is conclusive between the parties."

15

"a trial court judgment decide[d] a case on two alternate grounds, and the appellate court affirm[ed] based on one ground, the judgment [was] binding under principles of res judicata and collateral estoppel only on the ground addressed by the appellate court." 140 Cal. App. 4th at 1123. The Newport Beach panel, thus, "decline[d] to follow [Skidmore] because subsequent developments in California law and the trend of decisions ha[d] weakened that case's authority to the point where [it could] conclude it no longer reflect[ed] the views of the California Supreme Court." Id.

After examining Skidmore, McLaughlin, DiRuzza, Butcher, Moran Towing, and the Second Restatement, the Newport Beach panel expressly rejected what it referred to as the "traditional" Skidmore rule in favor of the "modern" rule established in the Second Restatement. It agreed with Butcher's observation that Skidmore "ha[d] not withstood the test of time." 140 Cal. App. 4th at 1130. Although Skidmore was a California Supreme Court case, the Newport Beach panel did not believe it controlled for several reasons. First, it stated that since Skidmore was decided, "the law of res judicata ha[d] undergone tremendous change culminating in the Restatement Second of Judgments." Id. at 1131. And it noted that "[t]he California Supreme Court ha[d] expressed approval of . . . [and] cited approvingly to section 27 and the comments to it." Second, it stated that the Skidmore rule was inconsistent with its duty as an appellate court under the California state constitution, which required that it "set forth its decisions in writing 'with the reasons stated.'" Id. at 1132. It concluded

16

with its belief that if the California Supreme Court were presented with the issue again, it would adopt the modern rule as expressed in the Second Restatement. Id.

**Zevnik**. In the most recent case, a panel in another division of the Second District Court of Appeal agreed with Newport Beach and Butcher, concluding "that the governing rule of law [was] that if a trial court relie[d] on alternative grounds to support its decision and an appellate court affirm[ed] the decision based on fewer than all of those grounds, only the grounds relied on by the appellate court [could] establish collateral estoppel." 159 Cal. App. 4th at 79. In doing so, it also examined the cadre of cases discussed above.

In a departure from Newport Beach, however, the Zevnik panel concluded that it "need not decide whether Skidmore retain[ed] viability because [it] read the opinion narrowly to apply only to res judicata, not collateral estoppel." Id. at 88.

### 2. Analysis.

Against this extensive backdrop of case law, we conclude, as did the bankruptcy court, that DiRuzza remains good law and thus binds the Panel. Although Appellants make compelling arguments based on recent cases by panels of the California Courts of Appeal, we cannot turn a blind eye to binding precedent from the Ninth Circuit. Nor is this a situation where the Ninth Circuit's reasoning or theory in DiRuzza is clearly irreconcilable with a decision of the California Supreme Court, the only intervening higher authority on a matter of California

17

state law. See Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 979 (9th Cir. 2013) ("[T]he relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable. But it is not enough for there to be some tension between the intervening higher authority and the prior circuit precedent.") (internal quotation marks and citation omitted); Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003)(en banc).

Here, the California Supreme Court has neither overruled Skidmore nor adopted the modern rule announced in Butcher, Newport Beach, and Zevnik. In the absence of a decision by the California Supreme Court contrary to the Skidmore rule, we remain bound by DiRuzza.[6] In Flying J, the district court

---

[6] Some justices of the California Courts of Appeal no longer follow Skidmore. As stated, we are bound by Ninth Circuit authority; thus, we, without question, follow DiRuzza and, as a result, Skidmore.

The Appellants, no doubt, will urge the Ninth Circuit to directly certify this question for review by the California Supreme Court or to reconsider DiRuzza en banc. We acknowledge that the Ninth Circuit implicitly rejected such a request in Flying J. In anticipation of such a renewed request, however, we note our concerns as bankruptcy judges.

Decisions regarding dischargeability are weighty ones. The failure to discharge a debt may leave a debtor incapable of a normal future financial life. And bankruptcy courts frequently consider the issue preclusive effect of California judgments in determining whether a debtor can discharge a debt.

In cases involving California judgments that have gone through appeal, the bankruptcy courts need certainty regarding the law we must apply; DiRuzza currently supplies this certainty.

Given the impact of our dischargeability decisions,
(continued...)

18

arrived at the same conclusion, stating that:

> Because the California Supreme Court's decision in Skidmore and the Ninth Circuit's decision in DiRuzza are binding law of the state and Ninth Circuit, respectively, and a federal trial court does not have the authority to change the state law of California even if a Supreme Court decision is criticized and not followed by more recent intermediate California appellate decisions, see Butcher, Newport Beach, and Zevnik, the rule of Skidmore applies.

2008 WL 906396, at *41. We note that the Ninth Circuit affirmed the district court in Flying J in 2009, although its memorandum decision does not refer to the DiRuzza/Skidmore issue. See 351 F. App'x 236.

We also recognize certain limitations in the precedential

---

[6](...continued)
however, we also should know the assumptions of the California Court of Appeal panel reviewing a California judgment. In order to do justice, we need to know either that the panel jurists assume that issues they do not decide will have preclusive effect, as is the rule articulated in Skidmore, or that the panel jurists assume that issues not decided are not entitled to preclusive effect in other proceedings. Given the current state of law, we do not have complete certainty that our interpretation of a specific California Court of Appeal decision is consistent with the interpretation of the jurists who decided the matter on appeal. We do not know whether a failure to address a claim means that the panel agreed that the state court below correctly decided the issue or whether the panel detected error but did not raise it given that the judgment could be affirmed on another basis. In situations where only an issue **not** decided on appeal subsequently supports a nondischargeable judgment, as may be the case here, the current disconnect between Skidmore and certain jurists of the California Courts of Appeal may lead to inequitable results.

We acknowledge that this is a problem that neither the Ninth Circuit nor the BAP nor the trial courts can solve in any absolute sense. It apparently will require that the California Supreme Court either reiterate its holding in Skidmore or state that it is no longer the law.

value of decisions of the California Courts of Appeal. For example, the judges of the Courts of Appeal — divided into six geographical districts — are not bound by decisions of either sister districts or even panels within the same district. See Froyd v. Cook, 681 F. Supp. 669, 673 n.9 (E.D. Cal. 1988) (collecting cases). And it is well established that "[d]ecisions of every division of the District Courts of Appeal are binding . . . upon all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court." Auto Equity Sales, Inc. v. Super. Ct. of Santa Clara Cty., 57 Cal. 2d 450, 455 (1962). That said, where California Courts of Appeal decisions conflict, the superior court "can and must make a choice between the conflicting decisions." Id. at 456.

Here, Butcher, Newport Beach, and Zevnik theoretically bind the California trial courts, but the trial courts clearly remain bound by Skidmore. See Auto Equity Sales, Inc., 57 Cal. 2d at 455 ("The decisions of [the California Supreme] [C]ourt are binding upon and must be followed by all the state courts of California."). Further, the precedential value of Court of Appeal decisions do not extend to another panel within the same appellate district, let alone to another appellate district in California. As the case law reflects, appellate panels in the Second and Fourth District Courts of Appeal did not follow Skidmore; it remains to be seen whether other panels of the

20

California Courts of Appeal will follow suit.[7]

Appellants do not argue that the other elements of California issue preclusion were not satisfied as to Barton's § 523(a)(2)(A) claim. On this record, we conclude that issue preclusion was available with respect to the fraud claim based on the state court judgment and that the bankruptcy court did not abuse its discretion in applying issue preclusion to the state court judgment. As that left no genuine dispute of material fact for the bankruptcy court to adjudicate, it did not err in granting summary judgment in Barton's favor on his § 523(a)(2)(A) claim.

**C.    The bankruptcy court properly granted summary judgment on Barton's § 523(a)(6) claim.**

Section 523(a)(6) excepts from discharge debts arising from a debtor's "willful and malicious" injury to another person or to the property of another. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008). The "willful" and "malicious" requirements are conjunctive and subject to separate analysis. Id.; In re Su, 290 F.3d at 1146–47.

A "malicious" injury requires: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and

---

[7]    For example, in People ex rel. Brown v. Tri Union Seafoods, LLC, 171 Cal. App. 4th 1549, 1574 (2009), one panel in the First District Court of Appeal appears to approve the position advanced by Newport Beach. In an unpublished case, however, another panel in the First District Court of Appeal distinguished Newport Beach. See Borrette Lane Estates, LLC v. Warren, 2010 WL 292754, at *5 & n.4 (Cal. Ct. App. Jan. 26, 2010).

21

(4) is done without just cause or excuse." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001).

The willful injury requirement speaks to the state of mind necessary for nondischargeability. An exacting requirement, it is satisfied when a debtor harbors "either a subjective intent to harm, or a subjective belief that harm is substantially certain." In re Su, 290 F.3d at 1144; see also In re Jercich, 238 F.3d at 1208. The injury must be deliberate or intentional, "not merely a deliberate or intentional **act** that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original). Thus, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64. Under California law, an award of punitive damages under California Civil Code ("CC") § 3294 requires a finding of fraud, malice, or oppression. Only fraud and one aspect of malice, as that term is defined for the purposes of the California punitive damages statute, satisfy the willful injury requirement of § 523(a)(6). Plyam v. Precision Development, LLC (In re Plyam), 530 B.R. 456 (9th Cir. BAP 2015).

Appellants contend that the bankruptcy court erred in determining that the fraud finding in the punitive damages award of the state court judgment established the willful and malicious injury requirements necessary for nondischargeability under § 523(a)(6). More specifically, they contend that the bankruptcy court erred because the California Court of Appeal "did not carry the [state court judgment's] conjunctive findings [of fraud, malice, and oppression] forward into its [d]ecision."

22

Instead, the Court of Appeal's decision "affirmed the award of punitive damages based solely on the finding of there being substantial evidence of 'malice and deceit' with no reference to fraud." Under Plyam, Appellants contend that "malice" by itself in a punitive damages award under CC § 3294 does not, without an accompanying finding of "intentional malice," establish the willful injury requirement under § 523(a)(6). They similarly argue that under California law, "deceit" may include negligent misrepresentation, which does not require an intent to defraud.

Issue preclusion was available. First, the state court's ruling on conversion and punitive damages satisfied § 523(a)(6)'s requirement of an underlying tort and "malicious" injury. And there is no dispute that this aspect of the state court judgment was affirmed by the California Court of Appeal. Conversion under California law does not per se establish the necessary state of mind for § 523(a)(6) nondischargeability because intent is not a necessary element. But there is no question that it establishes a tort that can support a § 523(a)(6) nondischargeability claim and a wrongful act that necessarily causes injury as required for a finding of § 523(a)(6) malicious injury. And there is also no question that the acts of conversion were intentional and without just cause or excuse. The California Court of Appeal as well as the trial court made clear findings that Tomkow and Khan harmed Barton intentionally, with malice, and through deceit. On this record, then, § 523(a)(6) malice was established through specific findings at both the trial court and appellate court level.

Second, given the foregoing discussion of DiRuzza and Skidmore, we similarly conclude that the bankruptcy court appropriately gave issue preclusive effect to the state court's punitive damages award, which was based on findings of fraud, malice, and oppression; this satisfies § 523(a)(6)'s willfulness requirement.

The trickier issue is one we need not decide: whether, if issue preclusion is based only on the appellate court's affirming the conversion determination (i.e., the modern trend), rather than the entirety of the trial court's decision (i.e., Skidmore), a **willful** injury is established. The California Court of Appeal's decision gives us pause in two respects. First, a determination of conversion, even if intentional, does not necessarily establish an intent to injure or a substantial certainty that injury will occur. Thus, the California Court of Appeal's decision, in isolation, may not establish § 523(a)(6) willfulness. Second, the Court of Appeal limited its affirmance of the punitive damages award to "malice" and "deceit," which could differ in substance from the trial court's finding of fraud, malice, and oppression for the purposes of CC § 3294.

We acknowledge that the labels used by the California Court of Appeal may not be sufficient for a § 523(a)(6) willfulness determination. Given the extensive comment that underscores these conclusions, however, this is a close call. As we acknowledge, we must draw all justifiable inferences in favor of the Appellants. Accordingly, we decline to affirm on this basis. Instead, we affirm because binding Ninth Circuit authority, as the bankruptcy court recognized, compels this

24

result notwithstanding any limitations in the basis for affirmance. Thus, the bankruptcy court appropriately gave issue preclusive effect to the punitive damages award, and it did not err in granting summary judgment in Barton's favor on his § 523(a)(6) claim.

**D.   Even though lesser punitive damages were assessed against him, Tomkow was equally complicit in willfully injuring Arnold.**

Tomkow alleges that both the California state court and the Court of Appeal recognized that his conduct was less egregious than that of Khan's for purposes of the punitive damages award. He contends that they found that he was complicit in the conversion and, thus, that his liability was imputed based on Khan's acts. Tomkow asserts that a subjective state of mind cannot be imputed for the purposes of § 523(a)(6).

Tomkow's argument is unavailing. First, the Ninth Circuit has imputed the knowledge and intent of a business partner to a debtor for the purposes of § 523(a)(6). See Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini), 780 F.2d 1440 (9th Cir. 1986). As this Panel has recognized, however, that decision predates the United States Supreme Court's decision in Geiger and, thus, "the continued efficacy of Cecchini as precedent on related questions is compromised." See Cal. Capital Ins. Co. v. Riley (In re Riley), BAP No. CC-15-1379-TaLKi, 2016 WL 3351397, at *7 (9th Cir. BAP June 8, 2016).

Second, the California state court and Court of Appeal determined that both Khan and Tomkow engaged in conversion. In its initial statement of decision, the state court found:

Tomkow and Khan determined that Barton was making

25

> little or no contributions to the success of [RIL]. Tomkow provided the idea and technical savvy and Khan proved to be a skilled fundraiser to keep the company afloat. What was Barton's role they wondered, and if indeed he was not even providing legal counsel, why should he continue as a shareholder of [RIL]? . . . The manner by which Khan and Tomkow attempted to separate him from that ownership gives rise to a proper claim for punitive damages.

The state court made no distinction between Khan and Tomkow. True, in its revised decision, the state court found that Tomkow's conduct was less onerous and that he was "complicit in the conversion of [Barton's] shares." That said, the finding does not impact or negate the state court's prior finding of intent.

The California Court of Appeal then reaffirmed that "Barton's harm resulted from Kahn **and** Tomkow's malice and deceit, not mere accident." (Emphasis added.) That Tomkow's conduct was less egregious than Khan's is reflected in the reduced amount of punitive damages assessed individually against Tomkow. This distinction, however, does not change the analysis of the § 523(a)(6) willful injury requirement.

**E. The bankruptcy court did not err in denying Appellants' motion for direct appeal certification.**

Appellants also contend that the bankruptcy court erred by denying their application for direct appeal certification to the Ninth Circuit pursuant to Rule 8006 and 28 U.S.C. § 158(d)(2)(A)(i)-(iii). They urge us to reverse the bankruptcy court's ruling.

Although the case law on this issue is sparse, it does not appear that a denial of an application for direct appeal certification under Rule 8006 and 28 U.S.C.

26

§ 158(d)(2)(A)(i)-(iii) is a final order. For example, denial of a 28 U.S.C. § 1292(b) certification is not appealable. See May v. Warner Amex Cable Commc'ns, 871 F.2d 1088 (6th Cir. 1989) (table); see also McCall v. Deeds, 849 F.2d 1259 (9th Cir. 1988) (denial of Civil Rule 54(b) certification is not appealable); Mem'l Hosp. for McHenry Cty. v. Shadur, 664 F.2d 1058 (7th Cir. 1981) (court of appeals reviewed matter by petition for writ of mandamus after denial of 28 U.S.C. § 1292(b) certification).

Even if such an order is final and subject to review when joined with the final decision on summary judgment, for the reasons discussed above, we conclude that the bankruptcy court did not err in denying the application. As stated, the bankruptcy court correctly determined that it was bound by DiRuzza and Skidmore. As a result, whether it believed that the matter was of public importance or required resolution of conflicting decisions is irrelevant. Finally, even if the bankruptcy court erred in denying Appellants' application — something that we do not determine — Appellants now have a direct path of appeal to the Ninth Circuit without the need for a Rule 8006 certification. Reversing the bankruptcy court on this point would be impractical and a waste of judicial resources.

**CONCLUSION**

Based on the foregoing, we AFFIRM.

27